296 So.2d 446 (1974)
Leon J. HEBERT et ux.
v.
MAYEUR AND COMPANY, INC., et al.
No. 6119.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1974.
*447 Roy L. Price, Metairie, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Charles W. Lane, III, Dennis L. Doise, New Orleans, for defendants-appellees.
Before REDMANN and GULOTTA, JJ., and MARCEL, J. Pro Tem.
GULOTTA, Judge.
Plaintiff seeks commissions claimed by her as a broker for defendant, Mayeur and Company, Inc., realtor, on sales of real property where agreements to sell and buy had been arranged through her prior to the termination of her employment with the real estate agency but were passed subsequent to her termination on April 15, 1968. The original agreement under which she was employed was that one-half of the net earned profits of the plaintiff would be divided with defendant.[1]
At the time of termination, it was agreed that Mrs. Hebert would be charged with no overhead or portion of the operating costs of the company (advertising or general office expenses) after April 15, 1968[2] and would receive all of her commissions for sales already generated but on which title had not passed. Defendant, however, deducted a fifty percent (50%) "commission override" from the commissions due. Commissions earned by plaintiff from these sales totaled $2,886.79. This is the sum sought by plaintiff. The trial court allowed the deduction in the sum of $1,143.40.
On appeal, plaintiff seeks to hold liable the surety[3] of the defendant company for the full amount of the commissions ($2,886.79) because of the claimed wrongful conversion of the funds by Mayeur. She also seeks attorney fees on the full commissions.
Defendants, on the other hand, contend that the sums deducted from the gross commissions were for services rendered by Mayeur and his secretary in connection with consummating the sales. They argue that when Mrs. Hebert left the agency, she took with her five to seven employees, whose responsibilities were to complete the sales. Their absence caused defendant and his staff to carry out those duties. It is conceded by defendant that after the termination date, plaintiff was not to pay any overhead expenses.
Credits or offsets claimed by defendant are based on the agreement between the parties. We fail to find any evidence to support any contractual arrangements. The trial judge, in written reasons, erroneously interpreted documents prepared by defendant to be a contract between the parties. These documents contain statements assessing plaintiff a 50 per cent charge for processing the sales, as well as acknowledgments that no overhead *448 was to be charged to plaintiff. These exhibits merely represent a unilateral expression of Mayeur that a 50 percent charge for processing the pending sales would be deducted. In the documents, Mayeur referred to this deduction as a "commission override." There is no indication from the record, however, of agreement by plaintiff. Absent plaintiff's assent, we cannot conclude Mayeur is entitled to deduct 50 percent of the commissions for services rendered in connection with the closing of the sales.
We cannot conclude further that defendant is entitled to a credit or offset based on unjust enrichment.[4] Mayeur failed in his burden to show specifically the services rendered by him or his employees to support this claim. Evidence offered by defendant in this respect was his statement that: "There was my time and the secretary's time." No secretary testified and no account of the specific services was made. No time sheet was offered in evidence by defendant. No evidence was produced relating to the effort expended on the consummation of the sales[5] other than Mayeur's general statement.
Moreover, there was evidence that Mayeur received compensation for these services. Defendant testified he received a 1 percent fee for processing FHA and VA sales but Mayeur did not know how many were in this category. He knew there were some. Mayeur's failure to carry the burden of proving the services rendered which constitute the basis of his claim in unjust enrichment will not allow recovery in the instant case. Voorhies v. Lomenick, 228 So.2d 509 (La.App.3rd Cir. 1969).
Accordingly, plaintiffs are entitled to a judgment in the sum of $2,886.79.
However, the Heberts are not entitled to attorney fees. Such fees are recoverable when agreed to by the parties or when provided by statute. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970); Bryan v. Ivey, 114 So.2d 88 (La.App.1st Cir. 1959). Both are absent here.
In the attempt to recover against Phoenix, the defendant's surety, plaintiffs rely on LSA-R.S. 37:1447 which provides recovery against the surety when anyone is injured or damaged by the broker or his salesman resulting from any wrongful act committed in furtherance of such business or from any fraud or misrepresentation by the broker or the salesman. We reject plaintiff's suggestion that this statute allows recovery against the surety by a salesman or an employee of the agent or broker. The clear intent of this statute is to protect the public from fraudulent misconduct and bad faith or real estate agents. See Seybold v. Fidelity & Deposit Co. of Maryland, 17 So.2d 841 (La.App.Orleans 1944); Amato v. Latter & Blum, Inc., 227 La. 537, 79 So.2d 873 (1955). The statute, in our opinion, does not contemplate recovery by an employee against his employer under the circumstances of this case.
The surety cannot be held liable for the amount owed by defendant.
Accordingly, that part of the judgment in favor of plaintiff and against defendant, Mayeur, Inc., is amended. It is now ordered that there be judgment in favor of plaintiffs, Mr. and Mrs. Leon J. Hebert, *449 and against Mayeur and Company, Inc., in the sum of $2,886.79, together with legal interest thereon from date of judicial demand until paid. In all other respects, the judgment is affirmed. Costs on appeal are to be paid by Mayeur, Inc.
Amended and affirmed.
NOTES
[1] Plaintiff had four or five salesmen working under her. While the record is not entirely clear, it appears net profits mean after the salesmen's commissions and operating costs were deducted.
[2] Mrs. Hebert had been charged with approximately $1,500 a month in operating costs by the company.
[3] Mayeur, individually, was discharged in bankruptcy on June 22, 1970.
[4] Louisiana Civil Code Art. 1965 reads:

"The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity." and Louisiana Civil Code Art. 2301 reads:
"He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
[5] There were 24 pending sales from which the commissions were generated.