318 So.2d 134 (1975)
Vernon B. WOODS
v.
Paul O. LANGENBECK.
No. 6691.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
On Rehearing September 9, 1975.
*135 Nicaud, Justrabo & Rousset, Rene R. Nicaud, Alwyn J. Justrabo, New Orleans, for plaintiff-appellee.
Little, Schwartz & Dussom, A. D. Freeman, New Orleans, for defendant-appellant.
Before GULOTTA, STOULIG and BOUTALL, JJ.
GULOTTA, Judge.
This is a suit by a contractor to collect.$10,273.37 in extras from the owner growing out of the construction of a residence. The defendant owner seeks damages in reconvention for expenses incurred, in addition to the contract price, to correct deficiencies resulting from unworkmanlike construction. The trial judge rendered judgment in favor of plaintiff contractor for the total amount of the 35 extras claimed. The reconventional demand was dismissed. Defendant owner appeals.
Langenbeck claims on appeal that plaintiff failed to produce sufficient evidence to prove with specificity the cost incurred for each extra. Defendant offered no expert evidence to dispute the costs claimed by plaintiff.
Before we discuss the particular items claimed, it is necessary that we set forth the jurisprudential authority pertaining to the sufficiency of evidence required in a case involving a contractor's claim for extras where the extras are to be paid on a "cost plus" basis. In the case of Sutherlin Sales Co. v. United Most Worshipful, etc., 127 So.2d 253 (La.App., 4th Cir. 1961), the court was confronted with the question of the proof required to show the cost expended for labor in restoring plaintiff's property, for metal printing plates and for labor to clean up debris resulting from a flood when defendant's agents opened and failed to close water faucets above plaintiff's establishment. The issue involved in Sutherlin, as in the instant case, was the sufficiency of the evidence. In awarding a judgment for plaintiff, the court set forth the standard of proof required in such cases as follows:
"It is a well settled principle of law that as a general rule a plaintiff must *136 specifically prove each item of damage in order to recover. However, an exception thereto has been recognized in instances where there is obvious damage, but the quantum is not susceptible of the most accurate proof. Under these circumstances, the trial court must use its own discretion in assessing damages, predicated on the testimony and evidence adduced.
"However, it is also a cardinal rule of evidence that plaintiff must produce the best evidence available to prove his claim."
The court went on to say further:
"The civil law offers a broad latitude to the trial judge for the individualization of each case in order to reach a just conclusion. The lower court obviously followed this technique in computing the amount of the obvious damages incurred by the plaintiff.
"Therefore, we conclude the trial judge was justified in exercising his discretion in evaluating the quantum awarded to the plaintiff."
See also Germann v. 557 Tire Co., 167 La. 578, 120 So. 13 (1928).
In Campo v. LaNasa, 173 So.2d 365 (La.App., 4th Cir. 1965), we said on rehearing:
"When there is a right to recovery, but the damages cannot be exactly calculated, the court has reasonable discretion to fix the quantum as best it can based upon all the facts and circumstances of the case."
In the instant matter, we are confronted with a claim for extras by a contractor based upon a "cost plus basis." According to the building contract, any extras to be included into the building had to be agreed upon in writing which was not done. The procedure followed was that the owner made requests for certain extras and the contractor complied with those requests without informing the owner of the cost at the time it was agreed to include the extras. It is clear from the record that the extras claimed by the contractor were placed in the building. It is also clear that in an overwhelming number of instances, the owner authorized the inclusion of the extras. There are instances where the contractor claims extras and the owner claims the additional expense was incurred because of unworkmanlike construction on the part of the contractor.
For purposes of clarity it is necessary that we consider each extra claimed individually to ascertain whether or not sufficient evidence was produced by the contractor to support his claim that certain costs were expended by him. There are 35 disputed extras claimed by the contractor, as follows:

(1)
Wallpaper other than called for in the plans and specifications. The basis of this claim is for additional wallpaper included in the foyer and dressing room. The amount claimed and awarded by the trial court is the sum of $366.00. The contractor introduced into evidence an invoice from a wallpaper contractor in the sum of $509.02 for material and labor used in wallpapering the Langenbeck residence. It is plaintiff's testimony that the cost of the wallpapering job, according to the original plans and specifications, amounted to $143.00. He explained that when that sum, $143.00, is subtracted from the amount of the total cost invoiced to him, the extra amounts to $366.00. The trial judge in his discretion awarded this amount to the plaintiff contractor. Without any contradictory evidence in the record we cannot say that the trial judge erred.

(2)
This extra is for a storage closet in the family room with four nine-inch Byfold doors in the sum of $127.34. The record contains an invoice in the sum of $50.71 *137 from a door company for the four nine-inch doors. Added to this invoice is a memorandum by plaintiff for extra labor in the sum of $50.00; extra materials, $15.29; and extra paint in the sum of $22.00. The total labor and materials cost for this extra is the sum of $138.00, according to the invoice and memorandum. Plaintiff assessed a lesser charge for this extra. The trial judge awarded plaintiff the amount claimed. We cannot say the trial judge erred.

(3)
This item is for eight additional paneled doors and track between the living room and dining room. The amount of this extra is $290.82. We fail to find any invoice supporting the claim for eight paneled doors. Nor do we find in the record any evidence in the nature of memorandum or otherwise to support with some definiteness the claim for labor incurred in connection with this extra. We conclude that the record does not support this claim. This claim is disallowed.

(4)
The basis of this extra is the cost to move a downstairs powder room and for the additional cost of plumbing fixtures such as tubs and water closets. It is the plaintiff's position that the actual cost of the tubs and water closets installed were more than those authorized in the plans and specifications. The record does not support such a finding. The specifications call for the lavatory, water closet and bathtub to be medium-priced, to be selected by the owner. We cannot ascertain from the record that the bathroom fixtures installed were priced other than "medium-priced fixtures." Plaintiff's proof of the additional cost for these fixtures is lacking. However, the record does support plaintiff's position that additional costs were incurred in moving the downstairs powder room. The cost of this extra must be reduced by the sum of $214.20. The amount of the erroneous award by the trial judge was in the sum of $358.66. Deducting $214.20, which we determine are unproved items, the balance owed to the contractor is the sum of $144.46.

(5)
This claim in the sum of $475.00 is for extra carpentry labor and materials for changing framing on windows, closets, door frames, bathrooms, stripping ceiling in the living room, family room, breakfast room, for accoustical title and false beam blocking.
From the testimony and the exhibits we are at a complete loss to make head or tails of this extra claim by the contractor. While the Sutherlin case and the other cases cited herein above allow some leeway to the contractor in his proof, nevertheless, we are unable to ascertain or isolate the basis of this claim. It is the contractor's responsibility to explain with clarity and reasonableness the basis of his claim. The record is so confused on this particular item that we cannot possibly allow this extra.

(6)
This extra is for accoustical title and false beams in the family room and breakfast room ceilings. It is clear from the record that the beams and accoustical tiles in those rooms were in addition to the accoustical tile called for in the specifications. It appears from the specifications that accoustical tile was to be placed in bedroom 1 and the study. Our consideration of the record leads us to a conclusion that plaintiff is entitled to the extras claimed for the additional accoustical tile and for the false beams. However, it appears that the defendant is entitled to a credit for the accoustical tile in the bedroom which was included in the original specifications. Because we are unable to ascertain the amount of that credit, we cannot allow such a credit since it has not been proved by the *138 defendant. Plaintiff is entitled to the $332.40 claimed for this extra.

(7)
The next extra is for the cost of installation of a window seat. This extra was authorized. The invoice shows that the cost of the window seat and installation is $70.80. The cost of painting and other extras in connection with the installation are reasonable. Plaintiff is entitled to be paid this extra in the amount of $100.22.

(8)
The next item is for the completion of a storage room into a sewing room. Plaintiff claims $332.42 for this extra. Whether this extra is allowable in the amount claimed is a credibility question. The evidence supporting this claim consists of a memorandum of itemized costs by Woods, an invoice from a heating and air conditioning company, and a memorandum from a worker in the sum of $49.20 for labor. We cannot say that the trial judge erred in permitting this extra in the amount claimed. It is significant that this extra also was authorized by the owner.

(9)
This extra is for the installation of an electric roof ventilator. This extra also was authorized by the owner. The amount claimed for this extra is $70.00. The invoices clearly support this claim of the contractor.

(10)
This extra is for kitchen cabinets and kitchen appliances in excess of the allowance. The specifications for Brandom cabinets or equal. The appliances called for in the specifications are G.E. The estimated cost for cabinets and appliances designated in the specifications amounts to $980.00 plus tax according to a witness, Cameron Gamble. According to the "Cameron" invoice and the testimony of Gamble, the total cost for the appliances selected by the owner is $845.50. The total cost of the kitchen cabinets with tax and the appliances selected is $2,096.42. Subtracting the $980.00 allowance from the total cost (i.e., $2,096.42) leaves a balance in extras totalling the sum of $1,116.42. However, the amount claimed is $988.18. While there is a discrepancy between the amount claimed by Woods and the amount of the Cameron invoice, the trial judge allowed an extra in the amount of $988.18. Since this is a lesser amount than that set forth in the invoice, we cannot say that the trial judge erred in allowing an extra in the lesser amount claimed by Woods.

(11)
The extra item claimed by the contractor is for painting unfinished vanities and utility room cabinets. The plans and specifications call for painted cabinets. The owner received painted cabinets as included in the plans and specifications. Proof is lacking that the contractor is entitled to the extra claim in the sum of $150.00. Defendant owner received only that which he contracted for and which was included in the plans and specifications.

(12)
This extra in the sum of $332.30 includes the cost for glazed ceramic tile as a substitute for standard tile. This extra was authorized by the defendant owner, however, an insufficiency of evidence exists because the proof of the difference in cost between glazed tile and standard tile is lacking. The invoice submitted from the tile man does not show the difference in the cost of glazed ceramic tile as compared with standard tile. Woods testified that the tile man told him what the difference in the cost is. This is clearly hearsay testimony and is inadmissible. There is no further proof in the record to support plaintiff's claim for this extra. The trial judge *139 erred when he permitted this extra to be awarded to the contractor.

(13)
This is a claim for carpeting in excess of the allowance in the game room, in the store room and on the stairs. This extra was authorized by the owner. Plaintiff contractor claims the total amount of the extra owed is $648.00. Our consideration of the record does not support the amount of this claim. The carpet invoice introduced into evidence by the plaintiff shows 246 yards of carpet installed. The specifications call for the installation of 213 yards of carpet. Simple mathematics indicates that 33 additional yards of carpeting were laid. At $9.50 per yard installed (called for in the specifications), the total cost for installation of the additional 33 yards amounts to $313.50. The contractor is entitled to an additional cost in the sum of $8.00 and $25.00 for material and additional labor costs incurred with this extra. Plaintiff is entitled to a total amount for this extra in the sum of $346.50.

(14)
This extra is for fire alarm system, switches, television outlets and extra electrical work. This extra was authorized by the defendant owner. The total amount claimed is $373.80. Admittedly, Woods erred in the assessment of the amount of this extra. His list of extras includes $324.80. He is frank to admit in his testimony that this amount is erroneous and that the correct amount is $324.80. We are of the opinion that this extra has been proved by the contractor to the extent of $324.80.

(15)
This extra is for electrical fixtures over the allowance. The amount claimed is $327.41. The electrical fixtures in the house were authorized by the defendant owner. According to the specifications, the allowance for electrical fixtures totalled $500.00. Plaintiff's claim for the excess is supported by invoices in the record. Plaintiff is entitled to recover the sum of $327.41 for the cost of the electrical fixtures in excess of the allowance.

(16)
This extra is for wood jambs and trim on all windows, carpentry labor, materials and painting. This extra was authorized by the owner. The amount of the claimed extra is the sum of $555.00. The trial judge saw fit to allow this award based upon the testimony of Woods. Woods testified that the material for the trim and jambs amounted to $72.50. He further testified that the carpenter labor amounted to $230.00. Painting, labor and paint costs total $182.41. The cost for the additional five windows added to the structure amounted to $64.09. Since there is no contradictory evidence in the record to dispute this amount and since the work was authorized by the owner, we cannot say that the trial judge abused his discretion in awarding plaintiff the amount of this extra. This is a credibility determination by the trial judge. There is evidence in the record to support his conclusion. However, there exists a mathematical error. The correct amount is $549.00.

(17) and (18)
This extra is for paneling installed in the utility room and closets. The amount claimed is $227.30. It is not disputed that the paneling was installed in the utility room and closets. It does not appear to be disputed that this was, in fact, an extra. The problem is that the invoices in the record are not supportive of the plaintiff's testimony. The trial judge did not permit a memorandum prepared by the plaintiff to be offered in evidence. Nevertheless, he allowed plaintiff's claim for this extra. This again is a credibility determination by the trial judge. The testimony of Woods supports the award. Therefore, there is support *140 in the record for the trial judge's conclusion. We cannot say that he is in error. The same result is applicable to (18), the extra claim for the paneling installed in the study. Plaintiff, therefore, is entitled to recovery for the paneling installed in the utility room and closets in the sum of $227.30 and for the paneling installed in the study in the sum of $174.73.

(19)
Plaintiff claims $96.00 for the driving of six extra pilings. It is clear that the pilings were driven. However, there appears to be an erroneous computation on the cost of the driving of the piles. The invoice shows $14.50 per piling cost. We compute the amount owed at $14.50 X 6 or $87.00. Plaintiff is entitled to this extra in that amount.

(20)
This claim is for extra brick work for extra brick columns. The amount of this claim is $80.00. There is sufficient proof in the record to show that the additional brick work was authorized and was installed. The amount assessed appears to be reasonable. We find no error in the award in the sum of $80.00.

(21)
This item is for the additional cost for house plans from Southern Blue Print in the sum of $18.43. The additional plans were ordered and the plans were used in connection with the construction of the house. Plaintiff is entitled to recover this amount.

(22)
This is a claim for interest payments for interim financing in the sum of $1,869.91. According to the building contract, stage payments were to be paid to the contractor upon completion of various stages of construction. The defendant owner's complaint is that plaintiff contractor drew from the Whitney Bank, at his pleasure and at any stage of the construction work, any amounts which he deemed fit and proper. According to defendant, this increased the amount of the interest owed to the lender by him. While there appears to be merit in defendant's argument, nevertheless, defendant acquiesced in the manner in which plaintiff received these payments. It certainly was within his power not to authorize or permit the bank to make payments until such time as each stage of the contract was completed as specified in the building agreement. Clearly the owner is responsible for interest incurred for interim financing. This amount was adequately proved by plaintiff. We find no error in the trial judge's award in the amount of the interest charged. However, the trial judge erroneously permitted 15% overhead and profit to be added to the amount of the interest owed. An adjustment is required in the total figure.

(23)
This is a claim for an additional five feet to the width of the driveway. This item was authorized by defendant owner. It is not disputed that additional cement was added. This against a judgment determination on the part of the trial judge. Great weight must be given to the fact that the trial judge inspected the property. We cannot say from the evidence that the trial judge was in error in permitting this award. Plaintiff is entitled to $136.00 for this claim.

(24)
This is a claim for the costs for changing twelve one-foot paneled doors on three fourfoot openings, carpentry, labor, materials and paint. The amount claimed is $332.82. We find evidence lacking in the record to support this claim as an extra.

(25)
This is a claim for a six-foot marble top that was substituted for a three-foot top in *141 the downstairs power room. This extra was authorized by defendant owner. The record supports the plaintiff contractor's claim for this amount. Plaintiff is entitled to $36.00 claim for this extra.

(26)
This is a claim for the installation of new track on eight doors between the living and dining rooms and four nine-foot doors on the family room closet. This is a claim for labor and for new tracks. The evidence of Woods and the invoice offered in evidence support this claim. This item was authorized by defendant owner. The total claim is for the sum of $52.77. Plaintiff is entitled to recover this amount.

(27) and (33)
This is a claim for the removal of stairs for reframing and sheetrocking under the new stairs. This claim and a claim for extras under item (33) for labor to install stairway furnished by defendant owner will be discussed together. These claims arose as a result of a problem emanating from the plans and specifications. It appears from the record that two sets of steps were constructed by the contractor. However, they were not satisfactory with the owner. Thereafter, the owner obtained a completely different set of stairs from a mill work company. This claim arises for the installation of these stairs as well as for sheetrocking, for removing the stairs and for reframing and resheetrocking under the new stairs. The trial judge allowed this claim for extras in the amount of $918.61 for labor to install the new stairway plus $99.00 for the removal of the stairs, reframing and by the court for these two claims amounts by the court for these two claims amounts to $1,017.61. It appears from our consideration of the record that this claim for labor is exorbitant. However, again the trial judge, in his discretion, permitted this award. He inspected the premises. We cannot substitute our judgment for that of the trial judge. The record does contain evidence and statements from Woods and a workman (Eddie O'Keefe) supporting this claim. For us to disallow the amount awarded by the trial judge would be to substitute our judgment for that of the trial judge. This we cannot do.

(28)
This is a claim for $48.72 for replacing obscure glass bathroom windows with clear glass windows. This claim is supported by the invoice. Plaintiff is entitled to the award claimed.

(29)
This is a claim for a raised hearth, slate on the hearth and marble facing. The hearth and slate were authorized by defendant owner. The contractor is clearly entitled to his claim in the amount of $78.00 for this part of the extras. He is not entitled to the additional cost for the marble facing. This is precisely what the plans and specifications called for. Plaintiff is entitled only to the sum of $78.00 for this extra instead of the $133.68 awarded by the trial judge.

(30)
This claim is for sheetrocking and painting the game room walls. Apparently this extra was authorized by defendant owner. This claim is a credibility call and is supported by the testimony of Woods. He testified that the labor and materials cost was $72.00 for the sheetrock work and that the painting costs totalled $53.00. Total cost amounted to $125.00. The record supports the trial judge's conclusions. Plaintiff is entitled to this award.

(31)
This claim is for the installation of two 18-inch doors between the living room and the kitchen instead of one 36-inch door. The contractor's testimony is clear on this *142 item. He claims that the two doors cost more than the single door. He assessed an additional cost in the sum of $25.00. This again is a credibility determination on the part of the trial judge. He permitted this award. We find no error. Plaintiff is entitled to this extra in the sum of $25.00.

(32)
This claim is for repainting the living room, dining room walls, woodwork and vanities. This claim arises from a dispute as to whether or not the repainting was required because of defective workmanship in the original paint job. The testimony does not appear to support a claim for extra. The defendant requested the area to be repainted. Presumably is was repainted because the original paint job was not satisfactory. This claim is clearly not for an extra. The evidence does not support the award. Plaintiff is not entitled to the $150.00 claimed as an extra.

(33)
This claim was discussed in connection with claim (27).

(34)
This is a claim for slate on the front stoop. It appears that the original plans do not call for a slate stoop. This is an extra. The claim is supported by an invoice in the sum of $222.20 for slate and labor furnished. We find no error in the award by the trial judge in the amount claimed. Plaintiff is entitled to the sum of $222.20

(35)
This claim of $50.00 is for the excess over the allowance for an intercom. The original specifications include an allowance of $175.00 for the intercom system. Plaintiff's testimony and the invoices attached show an overrage of approximately $68.13. The trial judge awarded plaintiff the sum of $50.00 for this extra. We find no error in the trial court's ruling. Plaintiff is entitled to the $50.00 claimed.

 RECAPITULATION
The total amount of award for extras
in the trial court amounts to $10,273.37.
We conclude plaintiff is entitled to
reimbursement for costs expended for
extras in the sum of 6,387.49.
plus 15% of that amount as agreed upon
or the sum of 958.12.
Plaintiff is entitled additionally to
interest paid in the sum of 1,869.91.
 ___________
Total extras to which plaintiff is
entitled $ 9,215.52.
Less credits allowed by contractor in
the sum of - 1,998.17.
 ___________
Balance owed to contractor on the
main demand $ 7,217.35.

RECONVENTIONAL DEMAND
The reconventional demand by the owner is based on the expenses incurred for correction of the claimed deficiencies resulting from the unworkmanlike construction by the contractor. The amount claimed is $19,236.33. The trial judge, in dismissing the reconventional demand in its entirety, relied on the case of Maloney v. Oak Builders, Inc., 224 So.2d 161 (La.App., 4th Cir. 1969), where the court stated:
"It is also well settled that even if the owner proves the existence of the defects or omissions and the cost of repairing them, he is nevertheless barred from recovering the cost thereof if he accepted the work despite the patent defects or imperfections discoverable upon reasonable inspection. Acceptance, however, does not bar the owner from recovering for defects not readily discoverable by ordinary inspection, or for defects which manifest themselves subsequent to the acceptance, or for defects which are explicitly excluded from the terms of the acceptance." (footnote omitted)
The trial judge concluded that the deficiencies complained of by defendant owner were patent ones, discoverable upon reasonable inspection and that defendant *143 owner accepted the work despite the patent defects or imperfections.
The owner moved into the residence on August 2, 1966. Acceptance was made by the owner on September 21, 1966. Leonard Beller, architect, made an inspection of the premises, at the request of the owner, on June 27, 1967. In a letter dated August 1, 1967, he particularized the specific unworkmanlike defects in the premises. This letter was received by the contractor on November 24, 1967. On October 16, 1969, contractor Woods filed suit claiming the extras sought. The claim in reconvention by the owner was filed on July 22, 1970, and was supplemented on September 20, 1971.
From our appreciation of the particular items listed by defendant owner in reconvention, we are of the opinion that the Maloney case relied on by the trial judge is applicable to the claims made in reconvention except in five instances. On the following five items the owner cannot be charged with failing to discover the defects by reasonable inspection. Accordingly, defendant is entitled to recover on the following claims in reconvention:
(1) The unevenness and gaps in the living room and dining room floors were admitted by Woods not to have been discernible at the time of the inspection. The cost for correction of this item totals $1,630.00. While this amount appears to be exorbitant, there is no contradictory testimony. Defendant owner is entitled to this amount in reconvention.
(2) The complaint that the ceiling beams in the breakfast room were of unseasoned lumber was not discernible at the time of the acceptance. According to the architect, Beller, this sap bled through at a later time. The cost for correction of this item is $160.00. The owner is entitled to be paid for this claim.
(3) The cost for correction of a hole in the floor next to the door jamb of the master bath could not have been discernible at the time of the acceptance. The owner is entitled to the amount of this claim in reconvention. This cost is $37.50.
(4) The defendant owner is entitled to the cost for the discoloration in the cement work or concrete work in the carport and patio. It was necessary to place a topping of exposed aggregate to correct this problem. It is our understanding that the original plans and specifications included the exposed aggregate finish. This construction was authorized on the same day of the acceptance. This amount also seems exorbitant, but contradictory evidence is lacking. Langenbeck is entitled to recovery of this amount in the sum of $1,057.00
(5) Defendant owner is entitled to recover the sum of $371.00 for replacing a warped front door. The record reflects that the contractor tried to correct this deficiency but was unsuccessful. Plaintiff was aware of this defect prior to acceptance and tried unsuccessfully to correct the problem. Defendant is entitled to recover this amount.

The total amount owed to the contractor
for the extras is $7,217.35.
The total amount owed to defendant
in reconvention is - 3,255.50.
 ___________
Plaintiff is entitled to a judgment in
the sum of $3,961.85.

Accordingly, the amount of the judgment of the trial court is amended reducing the award to plaintiff contractor from the sum of $10,273.37 to the sum of $3,961.85.
Defendant is not entitled to attorney's fees. It is well settled that attorney's *144 fees are recoverable only when provided for by statute or by contract.[1]
As amended, the judgment is affirmed.
Affirmed and amended.

ON REHEARING
On application by defendant owner Langenbeck, we granted a rehearing restricted to the question of the owner's attorney's fees.
In the application, Langenbeck points out that he does not quarrel with that part of our opinion which states that attorney's fees are recoverable only when provided for by statute or by contract. Defendant, however, finds error in our failure to award the owner reasonable attorney's fees in accordance with the provisions of the contract. That part of the building contract relied on by the owner for the assessment of attorney's fees against the contractor reads as follows:
"During the progress of the work, if said Contractor should become bankrupt, refuse or neglect to supply a sufficiency of material or of workmen, or cause any unreasonable neglect or suspension of work, or fail or refuse to follow the Plans and Specifications, or comply with any part of this contract, the said Owner, or his agent, shall have the right and power to enter upon and take possession of the premises, and may at once terminate this contract, whereupon all claims of said Contractor hereunder shall cease and the said Owner may provide material and workmen sufficient to complete the said work, after giving forty-eight hours notice, in writing, directed and delivered to said Contractor in person, or at his residence or place of business, and the expense of the notice, and the completing of various works, together with all costs, charges or attorney's fees incident to the completion or enforcement of this contract shall be a charge and lien against said Contractor and his surety, and may be deducted from the amount due or to become due him, and in such case no scaffolding or fixed tackle of any kind shall be removed, so long as the same is wanted for said work. Said Owner shall not be liable or accountable to said Contractor in any way for the manner in which he may have completed said work, nor shall the remedies and rights above given be construed as a substitute or a waiver of any of the legal rights of said Owner against said Contractor and his surety, growing out of this contract."
When considering attorney's fees in the instant case, it is necessary to consider additional facts not set forth in our original opinion. The building contract was entered into on November 12, 1965. The completion date, according to the contract, was June 1, 1966. The acceptance is dated September 20, 1966 and includes the customary language:
"WHEREAS the said Vernon B. Woods has satisfactorily performed everything required of it to be done by said building contract and PAUL O. LANGENBECK, hereby accept the work done under said contract * * *"
Langenbeck testified that he moved into the residence on August 2, 1966, approximately six weeks prior to acceptance.
In support of his position, Langenbeck relies on the case of Popich v. Fidelity and Deposit Co. of Maryland, 258 La. 163, 245 So.2d 394 (1971). The provisions in the Popich contract, relating to the owner's attorney's fees against the contractor, are similar to the provisions relating to attorney's fees in the instant case. Additional relief for collection of attorney's fees was provided to the owner against a surety who intervened and was made a party to the contract. After citing the pertinent provisions of the contract relating to attorney's *145 fees in the Popich case, the Supreme Court said:
"It is readily apparent that Fox [contractor] was under a liability imposed by the contract for attorney's fees resulting from the default of the builder."
Although the contract in Popich and in our case contain similar language, we do not find merit in the owner's suggestion that Popich is authority for the imposition of attorney's fees in the instant matter. There exists a salient factual difference between Popich and our case. In Popich, before completion, the owner placed the contractor in default and took possession of the premises. However, in the instant case, the job was completed to such an extent that Langenbeck actually moved into the premises and lived there for approximately six weeks before he signed the acceptance. He had accepted the property approximately one month before the list of extras was submitted to him by the contractor (October 17, 1966) and more than a year prior to the date that an amended list of the extras was submitted to him (November 8, 1967).
The pertinent language of the building contract, as we interpret it, provides for the assessment of attorney's fees against the contractor when the contract has not been completed and the owner takes possession of the premises and completes the job. We are not of the opinion that the provisions for the assessment of attorney's fees apply when the contract has been accepted and the owner occupies the premises, as in the instant case.
In Gross v. Breaux, 144 So.2d 763 (La.App., 4th Cir. 1962), this court was confronted with the question of attorney's fees in an agreement which contained langguage similar to that contained in our contract. In Gross, as in Popich, the owner had taken possession of the premises and had partially completed the work. The court awarded a judgment in favor of defendant owner on his reconventional demand and additionally awarded attorney's fees, but made a distinction between the remedy afforded when work is completed and that when work is not completed. The pertinent language is as follows:
"If the work was not completed, then, certainly, the defendants were entitled to their remedies as provided by the contract. If the work was completed, the owners are entitled to the remedy of reducing the contract price by an amount sufficient to perfect or complete the work under the authority of the well settled jurisprudence in this State. See Spicuzza v. Ranzino, La.App., 73 So.2d 208; Jones v. Tulsa, La.App., 100 So.2d 799."
Having concluded that the contract was completed to the extent that the building was occupied and accepted, we hold that the contractual provisions contained in the building contract relating to the owner's attorney's fees are not applicable. Langenbeck is not entitled to recover attorney's fees against contractor Woods. Our original judgment is reinstated.
Original judgment reinstated.
NOTES
[1] See Hebert v. Mayeur and Company, Inc., 296 So.2d 446 (La.App., 4th Cir. 1974) and Diesel Engine Repairs, Inc. v. Point Landing, Inc., 291 So.2d 791 (La.App., 4th Cir. 1974).