345 So.2d 204 (1977)
Huey Henry BREAUX, Plaintiff-Appellant,
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al., Defendants-Appellees.
No. 5855.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1977.
*205 Voorhies & Labbé by Patrick A. Juneau, Jr., Pugh, Boudreaux & Gachassin by Charles J. Boudreaux, Lafayette, for defendant-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by John G. Torian, II, Lafayette, for plaintiff-appellee.
Jacob D. Landry, of Landry, Watkins, Cousin & Bonin, New Iberia, for defendant-appellee.
Before CULPEPPER, WATSON and STOKER, JJ.
WATSON, Judge.
Original plaintiff herein, Huey Henry Breaux, claimed damages for defects in design and supervision of construction of the Congress Garden Apartments by defendant architect Benjamin Ray Champagne. Also named as defendants were three insurers, St. Paul Fire and Marine Insurance Company, Northbrook Insurance Company and Stuyvesant Insurance Company. Champagne and Northbrook filed a third party demand against Weill Construction Company, Inc. for indemnity as to any liability, and Weill filed a third party demand against its insurers, St. Paul and Trinity Universal Insurance Company. This appeal concerns only the claims of Northbrook against St. Paul and Trinity.
Breaux accepted a compromise settlement of $230,000, $225,000 from Northbrook and $5,000 from Champagne: a subrogation agreement was signed; and Northbrook was substituted as party plaintiff. Breaux released Champagne, Northbrook and Stuyvesant as to any damages for breach of the contract between Breaux and Champagne. Breaux reserved his rights against Weill on behalf of Northbrook and transferred any right against Stuyvesant for contribution to Northbrook. Northbrook filed an amending petition, contending that Weill breached its construction contract with Breaux, making Weill and its insurer, St. Paul, liable for the resulting damages.[1]
It is not necessary to list all of the twenty-three items of damage claimed originally by Breaux against architect Champagne. All relate to drainage and flooding problems of the Congress Garden Apartments, the study and amelioration thereof, and the damages to Congress Garden Apartments incident thereto. Illustrative of the claims is Item 1:

 "Estimated engineering fees to
 study drainage and flooding problems,
 make recommendation and
 designs as to possible remedial
 and/or rehabilitative work and
 field crews to do engineering, surveying,
 and supervising of remedial
 work ---------------------- $9,479.50"
 (TR. 6)

The only items of damages, possibly of a different nature, are those in paragraph IX, section 20, which concerns future furniture loss and section 23, which concerns loss of reputation of the apartment complex.
Summary judgment was rendered in favor of St. Paul and Trinity as to all claims except (quoting from the trial court's judgment):
". . . the claim for contents not furnished by or a part of the work product of Weill Construction Company under plaintiff's petition Article IX, subparagraph 20 and except as to the claim for loss of reputation to the complex under plaintiff's petition Article IX, subparagraph 23." (TR. 500)
The partial summary judgment was signed on October 11, 1976 and recites that *206 the written reasons were assigned in a Memorandum of Judgment dated August 23, 1976.[2] The matter came up for trial on the merits on August 24, 1976, before another division of the trial court. At this hearing, the parties disagreed as to what was included in the partial summary judgment. The matter was set aside to await signing of the partial summary judgment and this appeal. At that time, it was stipulated that, in consideration of the payment of $2500, Weill was released as to any claims not covered by the policies with St. Paul and Trinity, leaving these insurers as the only remaining defendants.
Northbrook, now the only plaintiff, has appealed from the partial summary judgments in favor of Trinity and St. Paul, contending that the trial court erred in finding no coverage under the policies except as to the claims in paragraph IX, sections 20 and 23, of the original petition.
Trinity has moved to dismiss Northbrook's appeal on the ground that Trinity was made a third party defendant by Weill; that Northbrook is not a party to that third party demand and hence has no standing to appeal the partial summary judgment granted to Trinity.

MOTION TO DISMISS
The motion to dismiss the appeal is without merit. Original defendant and substituted plaintiff Northbrook filed a third party demand for indemnity against Weill and Weill then filed a third party demand against its excess insurer, Trinity. LSA-C. C.P. art. 1111[3] provides that, when a defendant brings in a third party, plaintiff may assert against the third party any demand arising out of or connected with the principal demand. Whether a defendant can appeal against a co-defendant when no third party pleading has been filed by the appellant in the trial court was considered in Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963). The Supreme Court concluded in Emmons that an appeal against a co-defendant is tantamount to filing a third party demand. Appeals are favored under the law and the motion to dismiss the appeal as to Trinity is denied. LSA-C.C.P. arts. 2082[4] and 2086.[5]

MERITS
Trinity's is an "umbrella policy" and St. Paul's a "liability policy". The trial court granted partial summary judgments, concluding that similar provisions in their policies which exclude coverage for repair, replacement, loss of use or defective work by the insured, prevent recovery for any damages claimed other than those in paragraph IX, sections 20 and 23 of the petition. Section 20 asks damages for future furniture loss due to flooding and poor drainage; and section 23 asks damages for loss of reputation and renting desirability of the apartments. Trinity and St. Paul assert that consequential damages resulting from defects in construction in the entire apartment project, which constituted contractor Weill's work, are not covered under the policies, and that the trial court correctly granted the partial summary judgments.
*207 Northbrook contends that the other damages claimed in the petition are accidental losses resulting from the defective condition of the contractor's work, which are not excluded under the policies.
St. Paul's policy in pertinent part provides:
"Exclusions
"This insurance does not apply:
* * * * * *
"(o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
"(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein." (TR. 142)
Trinity's provides:
"EXCLUSIONS. This policy shall not apply:
* * * * * *
"(c) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;
"(d) to personal injury or property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purpose intended by the Named Insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any Insured, but this exclusion does not apply to personal injury or property damage resulting from the active malfunctioning of such products or work;
* * * * * *
"(g) to property damage to (1) property owned by the Named Insured, (2) the Named Insured's products arising out of such products or any part of such products, or (3) work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; * * *" (TR. 186)
All parties to the appeal discuss the applicability of Vobill Homes, Inc. v. Hartford Accident & Indem. Co., 179 So.2d 496 (La. App. 3 Cir. 1965) writ refused 248 La. 698, 181 So.2d 398. In Vobill, a summary judgment in favor of the defendant insurer was affirmed; this court concluded that responsibility for defects in a home constructed by the plaintiff contractor was excluded under a policy provision similar to those here. Vobill states that
". . . it has uniformly been held that a liability policy with an exclusion clause such as the present does not insure any obligation of the policyholder to repair or replace his own defective work or defective product." 179 So.2d 497
Vobill and its reasoning are precisely in point. The St. Paul and Trinity policies exclude clearly the coverage claimed by Northbrook, but disallowed by the trial court.
Vobill did not have the problem presented here of interpreting a partial summary judgment. However, LSA-C.C.P. art. 966 clearly provides for partial summary judgment, and St. Paul and Trinity are entitled to a determination that their policies do not provide the coverage claimed.
For another excellent review of the basic issue involved here, see the Illinois case of Hartford Accident & Ind. Co. v. Case Foundation Co., 10 Ill.App.3d 115, 294 N.E.2d 7 (1973), which cites Vobill and many other authorities. These cases stand for the proposition *208 that a liability insurer who includes a "work product" exclusion in its policy is not liable for damages to the work product (in many cases a building or structure of some sort) of the insured due to negligent, faulty, or defective construction and workmanship. In other words, the courts recognize that liability policies are not performance bonds.
For the foregoing reasons, the partial summary judgment rendered herein by the trial court is affirmed and the matter is remanded for further proceedings according to law.
All costs are to await final disposition.
AFFIRMED AND REMANDED.
NOTES
[1] Stuyvesant was also named as a defendant, Northbrook alleging that it was liable for all or part of the amount paid to Breaux on behalf of Champagne. Summary judgment was rendered in favor of Stuyvesant on the basis of an affidavit reflecting that Stuyvesant's policy had expired prior to discovery of the damages. No appeal has been taken from this judgment.
[2] Not in the record.
[3] LSA-C.C.P. art. 1111:

"The defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand.
In such cases the plaintiff in the principal action may assert any demand against the third party defendant arising out of or connected with the principal demand. The third party defendant thereupon shall plead his objections and defenses in the manner prescribed in Articles 921 through 969, 1003 through 1006, and 1035. He may reconvene against the plaintiff in the principal action or the third party plaintiff, on any demand arising out of or connected with the principal demand, in the manner prescribed in Articles 1061 through 1066."
[4] LSA-C.C.P. art. 2082:

"Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court."
[5] LSA-C.C.P. art. 2086:

"A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken."