381 So.2d 531 (1980)
Josie Scavone, Wife of/and Dr. Povilas VITENAS,
v.
Vincent P. CENTANNI et al.
No. 10463.
Court of Appeal of Louisiana, Fourth Circuit.
February 22, 1980.
Peter J. Vernaci, Metairie, for Josie Scavone, w/o and Dr. Povilas Vitenas plaintiffs-appellees.
George H. Jones, of Frank J. D'Amico and George H. Jones, New Orleans, for Vincent P. Centanni, defendant-appellant.
*532 Carl L. Aspelund, Law Offices of James J. Morse, New Orleans, for The Travelers Ins. Co., third party defendant-appellant.
Eugene R. Preaus, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for Fidelity and Deposit Company of Maryland, defendant third party plaintiff-appellee.
Before REDMANN, LEMMON and BOUTALL, JJ.
BOUTALL, Judge.
This is a suit for breach of warranty arising out of a building contract. Dr. and Mrs. Povilas Vitenas entered into a building contract with Vincent P. Centanni, a general contractor, and Fidelity & Deposit Company of Baltimore, Maryland provided the performance bond as surety. After the building was constructed and accepted by the owner, a number of serious defects began to appear in the premises, and Dr. and Mrs. Vitenas filed suit against the general contractor and the performance bond surety. Centanni subsequently filed a third-party demand against the Travelers Indemnity Company alleging coverage under an insurance policy which he placed with it, and praying for judgment against it. The trial court awarded partial judgment in favor of plaintiff against all three defendants in solido, and determined the third-party demands of the defendants amongst themselves. All four parties have appealed that judgment.
All of the issues flow out of the rights and obligations of the general contractor, Centanni, and we first direct our inquiry into the recovery of plaintiff against him.
Vitenas initially sued for over $15,000 in damages and then amended the petition to ask for in excess of $20,000. The complaint is that, after the building was accepted and occupancy begun, water leaks became apparent on all of the balconies of the structure, that the sliding aluminum doors as well as many windows leaked, and failed to operate properly, that the carport foundation sloped inward and allowed water to gather next to the wall of the main building, that the rear carport column is improperly supported, and a number of smaller items. His suit encompasses the cost of necessary repairs to correct the defects, fees paid to various architects and engineers in connection therewith, the fee and cost of a building lien, interest paid on a necessary loan, and attorney's fees. The trial court awarded only $2,395 in damages, $5,500 as attorney's fees, $100.00 for the cost of erasing the lien and $700 for expert witness' fees. Plaintiffs appeal the damage award as being incorrect and insufficient, and the defendants contest the other items awarded. The trial court found that the carport was improperly constructed in two instances: First, the roof rested on supporting columns, and the fascia board of the roof was placed on top of the column such that the weight rested on the board rather than the roof beams, causing a deterioration of the fascia boards and weakness to the roof; secondly, the concrete floor of the carport sloped towards the house and water puddled up near the house despite the contractor's attempt to repair this by placing a drain. He awarded $2,395 for these items, and the defendants do not contest them.
However, the contest is over the responsibility for the other defects which were enumerated above. It is adequately proven that water entered this house quite freely in periods of rain, and the issue is narrowed only as to who is responsible for the entry of the water. The trial judge cast this responsibility upon plaintiff who furnished the plans and specifications, pointing out that the defects were not caused by improper workmanship but because of deficiency in the plans and specifications. The major problem was in the area where the balconies joined the main house, and the sliding glass doors which were exposed to the elements without the protection of adequate overhang. Although there is some evidence that indicates that improper workmanship may have been the cause of some of the problem, the evidence overwhelmingly indicates that most of the problems arose because of the lack of sufficient pitch on the balconies to permit drainage away from the house, and the design of *533 the flashing installation, intended to make a waterproof seal between the balconies and the walls of the house. The trial judge gave a summarization of the evidence in reaching his conclusions, and we agree with them. Additionally, it was necessary that the judge assess and weigh the credibility of some of the witnesses, and the evidentiary value of their testimony. It is evidence that he gave considerably more weight to the testimony of the contractor and his witnesses and we find no manifest error in his conclusions. The defects in chief were defects occasioned because of the fault and insufficiency of the plans and specifications, including Dr. Vitenas' verbal instructions.[1]
L.S.A. R.S. 9:2771 states:
"§ 2771. Non-liability of contractor for destruction or deterioration of work.
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor."
The principles of this statute have been applied by us in the cases of Pittman Construction Company, Inc. v. City of New Orleans, 178 So.2d 312 (La.App. 4th Cir. 1965), writs refused; Katz v. Judice, 252 So.2d 532 (La.App. 4th Cir. 1971) writ refused; and LeBreton v. Brown, 260 So.2d 767 (La.App. 4th Cir. 1972), affirmed, 277 So.2d 645 (La.1973). Accordingly, we would affirm the amount of damages awarded by the trial judge, as well as the $100 payment for cancellation of the lien.
We do not agree with the award of attorney's fees under the terms of the building contract. The only obligation for attorney's fees to which we are referred is that provided during the progress of the work if the contractor should default as specified. We quote from the contract:
"During the progress of the work, if said Contractor should become bankrupt, refuse or neglect to supply a sufficiency of material or of workmen, or cause any unreasonable neglect or suspension of work, or fail or refuse to follow the Plans and Specifications, or comply with any part of this contract, the said Owner, or his agent, shall have the right and power to enter upon and take possession of the premises, and may at once terminate this contract, whereupon all claims of said Contractor hereunder shall cease and the said Owner may provide material and workmen sufficient to complete the said work, after giving forty-eight hours notice, in writing, directed and delivered to said Contractor in person, or at his residence or place of business, and the expense of the notice, and the completing of various works, together with all costs, charges or attorney's fees incident to the completion or enforcement of this contract shall be a charge and lien against said Contractor and his surety, and may be deducted from the amount due or to become due him, and in such case no scaffolding or fixed tackle of any kind shall be removed, so long as the same is wanted for said work. Said Owner shall not be liable or accountable to said Contractor in any way for the manner in which he may have completed said work, nor shall the remedies and rights above given be construed as a substitute or a *534 waiver of any of the legal rights of said Owner against said Contractor and his surety, growing out of this contract."
We have previously interpreted the provisions in a similar building contract in the case of Woods v. Langenbeck, 318 So.2d 134 (La.App. 4th Cir. 1975). We held (P. 145):
"The pertinent language of the building contract, as we interpret it, provides for the assessment of attorney's fees against the contractor when the contract has not been completed and the owner takes possession of the premises and completes the job. We are not of the opinion that the provisions for the assessment of attorney's fees apply when the contract has been accepted and the owner occupies the premises, as in the instant case."
We adopt that principle here, and reverse the award of attorney's fees.
The next specification of error is the award to plaintiff of $500 for expert witness' fees for Maurice Singer, and $200 for expert witness' fees for William White. Defendants contest this as excessive. The record discloses that Mr. Singer, an architect, examined the premises on a number of occasions and was called upon to make examinations and reports of various defects, a number of which were corrected in the course of negotiations between the parties In addition to his testimony at trial, the record discloses that he spent 3. ½ hours preparing for trial at $35 an hour or $122.50. Additionally, he was paid in excess of $900 for various services performed at the premises in its inspection, etc. We cannot determine precisely the amount of this work that would be attributable to his fee as an expert, but in any event, we cannot conclude that $500 is manifestly erroneous. Insofar as the fee of William White is concerned, he was an engineer who also had examined the premises on a number of occasions. He was initially produced as a fact witness, and when efforts began to qualify him as an expert, he insisted that he should be paid a fee of $150 for so testifying. He had previously been paid in excess of $1,000 for his employment by Vitenas. As with Singer, we cannot find manifest error under these facts. We affirm that portion of the judgment.
We now pass to a consideration of the relationship of the parties. Plaintiffs are entitled to recover the amounts above enumerated against defendant Centanni, he being the general contractor and party to the contract. Similarly, plaintiff is entitled to judgment in solido against Fidelity & Deposit Company of Maryland, the surety on the contract. For reasons to be discussed later, plaintiff is not entitled to judgment against Travelers Insurance Company. Although Centanni and Fidelity are liable in solido to plaintiff as between them, Fidelity is entitled to judgment on its third party demand against Centanni. As noted the relationship between them is general contractor and surety on the performance bond. The application for bond by Centanni to Fidelity contains an indemnity agreement whereby Centanni agrees to indemnify Fidelity against all loss, costs, damages, expenses and attorney's fees incurred by the company in its undertaking as surety, and accordingly, Fidelity is entitled to judgment against Centanni indemnifying it against the judgment on the main demand, as well as the stipulated attorney's fees and costs incurred by Fidelity in the amount of $2,446.10. See Grady v. Alfonso, 315 So.2d 832 (La.App. 4th Cir. 1975). We see no necessity to increase that amount.
The next item is the liability of Travelers Insurance Company under its policy placed by Centanni. That policy is a Comprehensive Automobile-General Liability policy which was in effect at the time of the construction. The trial court held that there was coverage under the policy, and cast Travelers in judgment on the main demand in solido with Centanni and Fidelity, and on Centanni's third party demand, cast Travelers for the virile portion of the judgment for which Centanni was cast. We would reverse these judgments, being of the opinion that there is no liability under the coverage afforded.
The policy, under its comprehensive general liability coverage, provides that the *535 company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage to which this insurance applies, caused by an occurrence. Under the policy definition, occurrence means "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;". Under the facts of this case, there was no occurrence as defined in the policy. The liability of the contractor is dependent solely upon his improper construction of the carport by slanting the concrete slab the wrong direction and by resting the roof facia board on the support column. It is claimed however that there may be liability present under either completed operations hazard provisions of the contract or under the products hazard provisions. It is contended that there are discrepancies amongst the exclusions which apply, and that, since ambiguous or conflicting statements should be resolved in favor of the insured, coverage is still obtained. The basis of this contention is the applicability of the following exclusions found in the policy as follows:
"EXCLUSIONS
This insurance does not apply:
"(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
* * * * * *
"(k) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;
"(l) to property damage to the named insured's products arising out of such products or any part of such products;
"(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"
Primarily we find no conflict in these exclusions. Exclusion (a) is simply contained within itself, and the remainder of that exclusion does not apply to the policy generally, only to the effect of that liability assumed except an incidental contract. The exclusions which apply to this case are those enumerated in (k), (l) and (m), all of which are consistent with each other. These exclusions supplement the named policies' provisions that there must be an occurrence or accident. Similar policy provisions have been considered and held not to insure any obligation of the contractor to repair or replace his own defective work or defective product. We refer to the cases of Vobill Homes, Inc. v. Hartford Accident & Indemnity Company, 179 So.2d 496 (La.App. 3rd Cir. 1965); Breaux v. St. Paul Fire & Marine Insurance Company, 345 So.2d 204 (La.App. 3rd Cir. 1977); and Peltier v. Seabird Industries, 304 So.2d 695 (La.App. 3rd Cir. 1974). Since we find no coverage under the policy, we can find no liability on the Travelers Indemnity Company, and accordingly we must reverse the judgments as to it.
Accordingly, for the reasons above expressed, we affirm the judgment appealed in part, and reverse in part and recast it as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiffs, Josie Scavone, wife of, and Dr. Povilas Vitenas, and against defendants, Vincent P. Centanni and Fidelity & Deposit Company of Baltimore Maryland, jointly and in solido as follows: 1.) in the full and true sum of $2,395, together with legal interest from date of judicial demand until *536 paid; 2.) in the sum of $100 for the cost of erasing the lien; 3.) expert witness fees of $500 for Maurice Singer and $200 for William White, taxable as costs of court; 4.) for all costs of the proceedings in the trial court.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of third-party plaintiff, Fidelity & Deposit Company of Maryland and against Vincent P. Centanni, requiring the said Centanni to indemnify it against the judgment for which it was cast on the main demand in favor of plaintiffs, as well as judgment in the full sum of $2,446 as attorney's fees and costs incurred by it.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Travelers Insurance Company and against all other parties, dismissing their demands against Travelers Insurance Company.
Appellants Josie Scavone, wife of and Dr. Povilas Vitenas shall bear their own costs of this appeal. Appellant Vincent P. Centanni shall bear all other costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND RECAST.
REDMANN, J., dissents in part.
REDMANN, Judge, dissenting in part.
Rather than have defendant-appellant bear all costs, we should divide the costsespecially the expert feesbecause plaintiffs did not prevail as to most of their claims. Plaintiffs lost on claims which greatly increased not only the length of the record but also the expert fees, and defendant should not pay plaintiffs' costs of presenting unsuccessful claims.
NOTES
[1] One of the main problems arose due to changing the balcony from redwood flooring to lightweight concrete. Dr. Vitenas' verbal instructions were, according to the contractor's testimony, to pitch the concrete (substituted for redwood) balcony only three fourths of an inch over its 12-foot width (rather than the three inches the contractor deemed appropriate), and to start the concrete flush with the door sills (rather than an inch and a half below the sills).