415 So.2d 354 (1982)
SUPERIOR STEEL, INC.
v.
BITUMINOUS CASUALTY CORPORATION.
No. 14553.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*355 Felix R. Weill, Baton Rouge, for plaintiff-appellant Superior Steel, Inc.
Carolyn Pratt Perry and Charles W. Franklin, Baton Rouge, for defendant-appellee Bituminous Cas. Corp.
*356 Before EDWARDS, LEAR and CHIASSON, JJ.
CHIASSON, Judge.
Plaintiff-appellant, Superior Steel, Inc., appeals the judgment of the trial court dismissing, on a motion for summary judgment, its action against its insurer, Bituminous Casualty Corporation, defendant-appellee.
Appellant filed this action against its comprehensive general liability insurer seeking indemnification for damages it had paid to a contractor as a result of appellant's products not meeting the required specifications. Appellee contends that the insurance policy issued to appellant does not afford coverage under the circumstances of the loss.
The facts of the instant case are undisputed insofar as they relate to the motion for summary judgment filed by appellee. Appellant's business generally involves furnishing fabricated steel products to general contractors on construction projects. In this particular instance, appellant was subcontracted by Boh Brothers Construction Company, Inc. to furnish steel anchor bolts for the Big Cajun No. 2 nuclear power plant in New Roads, Louisiana. Appellant was to deliver the anchor bolts in accordance with drawings and specifications furnished to it by Boh Brothers.
In furtherance of its obligation under the contract, appellant negotiated with Metal Services Corporation for a supply of steel rounds to fabricate into the specified bolts. Subsequently, Metal Services supplied appellant with the steel rounds, and appellant fabricated them into anchor bolts. The anchor bolts were then furnished to Boh Brothers, which installed them into concrete at the project site. After all of the anchor bolts were installed, Boh Brothers began "knocking" the bolts for alignment, which is a normal procedure. During the performance of this task, one of the anchor bolts broke. As a result, Boh Brothers decided to have all of the bolts tested. The test indicated that the bolts did not meet the requirements of the drawings and specifications in that the carbon content of the steel was excessive and that the tensile strength of the bolts was substandard. Appellant's president and primary stockholder, Joseph E. Easley, admitted that the bolts did not meet Boh Brothers' requirements.
After it was discovered that the bolts did not meet the specifications, appellant agreed to pay for the repairs, because Boh Brothers was a valued customer. Appellant has since filed suit against Metal Services for indemnification contending that the steel supplied did not meet specifications.
The repairs, which were necessitated by the substandard bolts, consisted of drilling out the installed bolts and replacing them with new bolts furnished by appellant. The drilling to remove the defective bolts damaged the surrounding concrete, necessitating its repair also. The removed bolts were rendered useless by the removal process. Appellant seeks recovery of the value of the defective bolts and the amount it paid in damages to Boh Brothers. Appellee contends that it is entitled to summary judgment because the coverage provisions of the comprehensive general liability section of the policy do not afford coverage and because specific clauses of the policy expressly exclude coverage, even if the policy does afford coverage. We are not favored with the trial court's reasons for granting the summary judgment.
Article 966 of the Louisiana Code of Civil Procedure provides, in part:
"The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
In the instant case, there is no genuine issue of material fact as the facts are undisputed. Hence, a decision in this case rests upon whether or not the trial court was correct in concluding that, under the undisputed facts, defendant was entitled to judgment as a matter of law.
*357 Bituminous alleges that there is no coverage under the provision of the comprehensive general liability insurance policy since there was no accident or event which would constitute an occurrence. We find that, regardless of the "occurrence" argument, there exists coverage under the "completed operations hazard" and "products hazard" provisions[1] of the policy in question. Vitenas v. Centanni, 381 So.2d 531 (La.App. 4th Cir. 1980).
Since we conclude that there is coverage under the provisions of the policy in question, we next must decide whether any of the policy exclusions absolve the insurance company of any liability in this case.
The three exclusions on which defendant-appellee relies are as follows:
"This insurance does not apply:
* * * * * *
"(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
* * * * * *
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
"(n) to property damage to the named insured's products arising out of such products or any part of such products;
* * * * * *
"(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;"
We have before us a claim for damages to tangible property which has been physically injured. Therefore, exclusion (m)(2) is clearly inapplicable since it applies only to "... tangible property which has *358 not been physically injured or destroyed..."
The defective bolts in question are the "named insured's products" and under exclusion (n), this policy does not apply to damage to the bolts themselves. Peltier v. Seabird Industries, Inc., 304 So.2d 695 (La. App. 3rd Cir. 1974); Vobill Homes, Inc. v. Hartford Accident & Indemnity Company, 179 So.2d 496 (La.App. 3rd Cir. 1965); Breaux v. St. Paul Fire & Marine Insurance Company, 345 So.2d 204 (La.App. 3rd Cir. 1977). The trial court was correct in granting summary judgment on this particular point. However, the liability of Bituminous is limited to the damage to tangible property other than the bolts themselves due to the defective condition of the product. Peltier, supra; Vobill Homes, Inc., supra; Breaux, supra.
Bituminous, citing the cases of Breaux, supra, and Vobill Homes, Inc., supra, contends that exclusion (p) unambiguously excludes coverage for damages suffered by a contractor as a result of his defective work. We think that this is not the holding of Breaux. Breaux has been cited for the proposition that a similar policy work-product exclusion was applicable with respect to any obligation of the policyholder-contractor to repair or replace its own allegedly defective work in construction of an apartment complex. Breaux cites the case of Vobill Homes, Inc., which held that recovery for the injury to the work-product itself was excluded by the clause in question. Vobill does not speak of damage to other property but only to injury to the work-product itself by reason of its own defectiveness.
Plaintiff-appellant relies on the case of Arcos Corporation v. American Mutual Liability Insurance Company, 350 F.Supp. 380 (E.D.Penn.1972), which held that exclusion (p) was applicable only when an insured learns that all of its products have a defect and attempts to prevent any additional accident by withdrawing them from the market or from use. "Complete operations hazard" and "products hazard" contemplate "... risks resulting from the liability of a manufacturer or a contractor for faulty or defective products or work to other users thereof suffering injury from such products or work after the products have left possession of the manufacturer or after the work has been completed and accepted." Roberts v. P. & J. Boat Service, 357 F.Supp. 729 (D.C.La.1973).
We hold that damages suffered by other users resulting from a defective product after the manufacturer has completed all of its operations required by the contract are covered by the liability policy issued by appellee.
Lending credence to our conclusion is the fact that the endorsement attached to and made a part of this policy relative to completed operations and products liability insurance fails to exclude this particular coverage as has been done in other insurance policies. In the Roberts case, supra, the court denied coverage on the basis of the following policy endorsement:
"... It is agreed that such insurance as is afforded by the bodily injury liability coverage and the property damage liability coverage does not apply to bodily injury or property damage included within the completed operations hazard or the products hazard..."
Additionally, it is well-established in Louisiana and elsewhere that a clear and unambiguous provision in an insurance contract which limits liability must be given effect. Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974). However, we find that the clause in question is subject to so many inconsistent interpretations that it must be termed ambiguous and, therefore, the exclusionary clause must be resolved in favor of coverage. Insurance Company of North America v. Solari Parking, Inc., 370 So.2d 503 (La.1979).
For the foregoing reasons, the trial court correctly granted Bituminous' motion for summary judgment as it pertains to plaintiff-appellee's claim for damages to its own work-product and incorrectly granted the motion as it pertains to damages caused to others by such defective products.
*359 The judgment of the trial court is affirmed in part, reversed in part and the case is remanded to the trial court for further proceedings consistent with this opinion. All costs are to await the final determination of this case.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] "[C]ompleted operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
The completed operations hazard does not include bodily injury or property damage arising out of
(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or
(c) operations for which the classification stated in the policy or in the company's manual specifies `including completed operations';"
"[P]roducts hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;"