432 So.2d 1082 (1983)
AETNA INSURANCE COMPANY, Plaintiff-Appellee,
v.
GRADY WHITE BOATS, INC., et al., Defendant-Appellant.
No. 82-685.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
*1083 Haik, Haik & Minvielle, Edwin S. Patout, New Iberia, for plaintiff-appellant.
Voorhies & Labbe, Amos H. Davis, Allen, Gooch & Bourgeois, Arthur I. Robison, Hiatt, Fazzio & Kuehne, Anthony Fazzio, Lafayette, Gibbens & Blackwell, John Blackwell, New Iberia, Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, Randy J. Fuerst, Lake Charles, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellee.
Before DOMENGEAUX, FORET and CUTRER, JJ.
FORET, Judge.
Aetna Insurance Company (plaintiff) brought this action to recover the sum of $9,000, which it paid to two of its insureds for the loss of a boat owned by them. One of the named defendants is Himel Marine, Inc. (Himel). Himel brought a third party demand against its comprehensive general liability insurer, United States Fidelity & Guaranty Company (USF & G). In response, USF & G filed a motion for summary judgment.
The trial court, after hearing USF & G's motion, rendered judgment in its favor, dismissing Himel's third party demand with prejudice.
Himel appeals and raises the following issues:
(1) Whether the trial court erred in finding no genuine issue of material fact with respect to the insurance coverage afforded Himel by USF & G; and,
(2) Whether the trial court erred in finding no genuine issue of material fact with respect to USF & G's duty to defend Himel.

FACTS
In its petition, plaintiff alleged that two of its insureds (Alvin J. Toups, Jr. and Steven Wright) were the owners of a vessel which sank in the Gulf of Mexico after striking an oil rig. On the day of the accident, plaintiff had in full force and effect a policy of insurance on the vessel. Pursuant to the terms of that policy, plaintiff paid its insureds $9,000. It then instituted *1084 this action alleging that it was legally and/or contractually subrogated to the rights of its insureds. Plaintiff's insureds had purchased the vessel from Himel, and it alleged that Himel had committed certain acts of negligence which were a cause-in-fact of the accident. Plaintiff also sought to assert a cause of action against Himel on the basis of strict liability.
Himel, after answering plaintiff's petition, filed a third party demand against USF & G in which it alleged that USF & G had issued it a contract of insurance providing coverage for completed operations hazard and product hazards. In addition, Himel alleged that the contract of insurance provides that USF & G shall have the right and duty to defend any suit brought against it, and that USF & G had refused to defend it against plaintiff's suit. USF & G then filed its motion for summary judgment alleging that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law.

MOTION FOR SUMMARY JUDGMENT
Himel contends that the trial court erred in granting USF & G's motion for summary judgment because there exists a genuine issue as to certain material facts, i.e., the coverage afforded by USF & G to it under the terms of the policy.
"COVERAGE B-PROPERTY DAMAGE LIABILITY" found in the comprehensive general liability insurance provisions of the policy reads as follows:
"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation or settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements."
(Underscoring indicates policy language emphasis by darker print.)
Completed operations hazard is defined as follows:
"`completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the Named Insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
The completed operations hazard does not include bodily injury or property damage arising out of:

*1085 (a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or
(c) operations for which the classification stated in the policy or in the Company's manual specifies `including completed operations';"
Products hazard is defined as follows:
"`products hazard' includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others;"
Exclusions (n) and (o) found in the comprehensive general liability insurance provisions read as follows:
"This insurance does not apply:
. . . . .
(n) to property damage to the Named Insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith ....".
(Underscoring indicates policy language emphasis by darker print.)
Finally, "Named Insured's products" is defined as follows:
"`Named Insured's products' means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but `Named Insured's products` shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;"
In its brief filed in this Court, USF & G states that it has never denied that the policy it issued Himel provides coverage for completed operations hazard and products hazard. However, it argues that there is a significant difference between the extension of coverage for damages arising out of operations or the named insured's products, as opposed to the exclusion of coverage for damage to the named insured's products.
In its oral reasons for judgment, the trial court noted this distinction and stated that:
"A reading of the exclusionary language in this liability policy makes it clear to me that damage to the product itself is excluded from coverage, the purpose of the policy being a multi-peril liability type policy, and not a collision type or property damage in itself type policy."
Our jurisprudence is settled to the effect that liability policies containing exclusions similar to those reproduced above provide no coverage to the insured for repair or replacement of his own defective work or defective product. See Vobill Homes, Inc. v. Hartford Accident & Indemnity Company, 179 So.2d 496 (La.App. 3 Cir.1965), writ denied, 181 So.2d 398 (La.1966); Vitenas v. Centanni, 381 So.2d 531 (La.App. 4 Cir. 1980); Peltier v. Seabird Industries, Inc., 304 So.2d 695 (La.App. 3 Cir.1974), writ denied, 309 So.2d 343 (La.1975); Breaux v. St. Paul Fire & Marine Insurance Co., 345 So.2d 204 (La.App. 3 Cir.1977); Superior Steel, Inc. v. Bituminous Casualty Corporation, 415 So.2d 354 (La.App. 1 Cir.1982).
We agree with the trial court's finding that no coverage is provided by USF & G for damage to the named insured's (Himel's) products.
However, Himel argues that the endorsements for coverage for completed operations hazard and products hazard supersede the exclusions found in the policy. In the alternative, Himel argues that said endorsements conflict with the exclusions and give rise to ambiguity in the policy. We find no merit to either of Himel's arguments.
*1086 We agree with the lower court's finding that the policy provisions are unambiguous and adopt its following reasoning:
"Now, the only other question is, does the definitions portion in defining, quote, completed operations hazard, close quote, and, quote, products hazard, close quote, do those provisions either make an exception to the exclusion, or, does it create vagueness or possible room for dual interpretation of the policy so that the presumption under the law which would which would favor the insured as opposed to the insurer, since the insurer drafted the language, would apply. I think not. I don't see a contradiction in language. The completed operations hazard definition seeks to include protection against bodily injury and property damage liability arising out of operations. And that word operations is the key word, and it's further defined to include materials, parts, or equipment, and we can assume that boat is equipment. Okay? [sic] again going back to the beginning language, the completed operations hazard includes bodily injury and property damage arising out of operations, not to the equipment. I think that language is clear enough. The rest of the language underneath there, to me, does not bear upon this issue. The same thing is true under the products hazard definition, which includes bodily injury and property damage arising out of the named insured's products. Not to the products, but arising out of them."
Finally, Himel argues that coverage is provided by the USF & G policy because plaintiff's action sounds in tort, rather than redhibition. We find no merit to this argument.
Absent conflict with statute or public policy, insurers may, by unambiguous and clearly noticeable provisions, limit liability and impose such reasonable conditions as they wish upon the obligations they assume by contract. Jones v. MFA Mutual Insurance Company, 410 So.2d 1190 (La. App. 3 Cir.1982); Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478 (La.1973); Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974); Breaux v. St. Paul Fire & Marine Insurance Company, 326 So.2d 891 (La.App. 3 Cir.1976). In these circumstances, unambiguous provisions limiting liability must be given effect. Jones v. MFA Mutual Insurance Company, supra; Breaux v. St. Paul Fire & Marine Insurance Company, 326 So.2d 891 (La.App. 3 Cir.1976); Snell v. Stein, 259 So.2d 876 (La.1972); Niles v. American Bankers Insurance Company, 258 So.2d 705 (La.App. 3 Cir.1972).

DUTY TO DEFEND
Having found no coverage afforded to Himel by USF & G for the loss of plaintiff's insureds' vessel, we must now determine whether USF & G has a duty to defend Himel against plaintiff's claim.
An insurer's obligation to defend suits brought against its insured is determined by the allegations of the plaintiff's petition. The insurer is obligated to provide a defense unless the petition unambiguously excludes coverage. McKinney v. Greene, 379 So.2d 69 (La.App. 3 Cir.1980), writs denied, 381 So.2d 1233, 1235 (La.1980); American Home Assurance Company v. Czarniecki, 230 So.2d 253 (La.1969); Jackson v. Lajaunie, 270 So.2d 859 (La.1972).
The allegations of plaintiff's petition unambiguously exclude coverage as it states that the vessel (one of the "Named Insured's products") was a total loss as a result of which plaintiff paid the sum of $9,000. It is obvious that plaintiff is seeking to recover for property damage to the vessel itself. Thus, there is no merit to Himel's argument that USF & G has a duty to defend it against plaintiff's claim.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against third party plaintiff-appellant (Himel).
AFFIRMED.