497 So.2d 370 (1986)
FREDEMAN SHIPYARD, INC., Plaintiff-Second Appellant,
v.
WELDON MILLER CONTRACTORS, INC., Defendant-First Appellant.
No. 85-1250.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*371 Camp, Carmouche, Van M. Davidson, Jr., Lake Charles, for plaintiff-appellee-appellant.
Hunter and Plattsmier, Charles B. Plattsmier, Morgan City, for defendant-appellant-appellee.
Plauche, Smith and Nieset, Jeffrey M. Cole, Lake Charles, for defendant-appellee.
Before GUIDRY, DOUCET and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in finding that an insurance policy did not provide coverage to the defendant for the plaintiff's claim.
Fredeman Shipyard, Inc. (hereinafter referred to as Fredeman) filed suit seeking recovery of damages against Weldon Miller Contractors, Inc. (hereinafter referred to as Miller) and National Union Fire Insurance Company of Pittsburg, Pennsylvania (hereinafter referred to as National Union), its insurer under a policy of comprehensive general liability insurance. The damages were allegedly caused by Miller's negligent installation of a steel sheet bulkhead. National Union filed a suit for declaratory judgment seeking to have the Court decide whether or not coverage was provided to Miller under its policy for the losses alleged by plaintiff. From a trial court judgment determining that there was no coverage, Fredeman and Miller both timely appeal. We affirm.

FACTS
On July 6, 1982, Fredeman contracted with Miller for the driving of a 600 foot wall of steel sheet piling to be used as a bulkhead in the construction of a dock slip at Fredeman's shipyard. Miller's work consisted of removing a section of old bulkhead and installing the steel sheet piling furnished by Fredeman. After completion of the project, Fredeman discovered that interlock separations had occurred in the steel sheet piling forming the bulkhead. Fredeman then made temporary repairs by sealing the open interlocks of the steel sheet piling. Because of continuing maintenance problems, Fredeman was unable to use its facility as planned.
At the time of the work by Miller, National Union had issued a policy of comprehensive general liability insurance to Miller. Prior to construction, National Union furnished Fredeman with a certificate of its insurance coverage of Miller.
On August 3, 1983, Fredeman filed suit against Miller and National Union seeking damages for repair costs and business losses which were allegedly caused by Miller's negligent installation of the steel sheet piling used in the bulkhead. National Union denied coverage of Miller for Fredeman's claims. Miller filed a third party demand against National Union, seeking indemnity for any sums that it might be held liable to Fredeman, and for attorney's fees and other costs incurred in defending itself.
On April 23, 1984, National Union filed a suit for declaratory judgment, seeking to have the Court decree whether or not its policy provided coverage to Miller for the *372 losses alleged by Fredeman. The trial court held that a liability policy with an exclusion clause, such as the one in this case, does not insure any obligation of the policy holder to repair or replace his own defective work or product. No specific provision in the insurance policy was referred to as the basis for the trial court's decision.
Fredeman and Miller appeal from the judgment, alleging that the trial court erred in finding that coverage was not provided to Miller by the policy of National Union, asserting the following assignments of error:
(1) The trial court erred in finding that the general liability policy written by National Union did not provide coverage for Fredeman's damages in that the collapse hazard, completed operations hazard, and the product hazard provisions of the policy clearly and unambiguously provide coverage for Miller's activities;
(2) The trial court erred in holding that the exclusions in National Union's policy apply to the facts in this case; and
(3) The insurance policy of National Union is ambiguous and any doubts must be resolved in favor of the insured.

COVERAGE AND POLICY EXCLUSIONS
Appellants contend that the general liability policy written by National Union specifically provides coverage for Miller's pile driving work for Fredeman under the collapse hazard, completed operations hazard, and the products hazard provisions of the policy. These terms are defined under the Definitions section of the policy as:
"`collapse hazard' includes `structural property damage' as defined herein and property damage to any other property at any time resulting therefrom. `Structural property damage' means the collapse of or structural injury to any building or structure due to (1) grading of land, excavating, borrowing, filling, backfilling, tunnelling, pile driving, cofferdam work or caisson work or (2) moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support thereof. The collapse hazard does not include property damage (1) arising out of operations performed for the named insured by independent contractors, or (2) included within the completed operations hazard or the underground property damage hazard, or (3) for which liability is assumed by the insured under an incidental contract;
`completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
The completed operations hazard does not include bodily injury or property damage arising out of
(a) operations in connection with the transportation of property, unless the bodily injury or property damage *373 arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or
(c) operations for which the classification stated in the policy or in the company's manual specifies `including completed operations';
* * * * * *
`products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named Insured and after physical possession of such products has been relinquished to others;"
The certificate of insurance, which was presented to Fredeman by Miller prior to signing their contract, indicates that defendant's general liability policy included coverage for premises-operations, explosion and collapse hazard, underground hazard, products/completed operations hazard, contractual insurance, and independent contractor's insurance. National Union asserts that while the premium calculation sheet indicates that completed operations hazard is included in the policy, the completed operations coverage questionnaire was incomplete and therefore completed operations coverage was not a part of the policy. National Union further asserts that even if completed operations coverage is found because it was included in the insurance certificate it issued to Fredeman, the definition of that coverage is still subject to all terms and exclusions of the policy.
Pertinent definitions and exclusions in the policy relied on by National Union as the basis for denying coverage are as follows:
"`contractual liability' means liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.
* * * * * *
Exclusions:
This insurance does not apply:
* * * * * *
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
(n) to property damage to the named insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or *374 suspected defect or deficiency therein;"
National Union contends that because part of the questionnaire concerning completed operations coverage was left blank, this provision is not part of the policy. In Glass v. Flowers, 149 So.2d 747 (La. App. 1 Cir.1963), writ ref'd, 151 So.2d 690 (La.1963), the court held that "completed operations" coverage under a contractor's schedule liability policy is a separate and distinct risk not covered under premises-operations hazard, and therefore requires a separate premium. The premium calculation sheet issued to Miller indicates that completed operations hazard is included, but there is no evidence that a separate policy exists for this coverage. Weldon Miller, the President of the defendant company, testified that he was not sure he purchased completed operations coverage. His testimony was as follows:
Q. Did they discuss with you products and coverage
A. Yes, sir, we discussed products.
Q. and completed operation coverage?
A. Well, I don't know the completed operation was discussed in detail, but very definitely products. I'm not familiarI wasn't before this case come up completely familiar with the term `completed operations'. I call it products liability. I think maybe I had ayou knowmaybe a little bit some of my termslike you said, your terms aren't all together oil field; mine are not all insurance.
Q. All right.
A. Some of y'all's insurance terms, I'm not really familiar with.
We went over to make sure that I had coverage for all cases where I would bein my own opinion, I had or in my own mind, I had coverage to cover everything that I needed. I was completely covered."
The coverage part of the policy provides:
"COVERAGE A-BODILY INJURY LIABILITY
COVERAGE B-PROPERTY DAMAGE LIABILITY
The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence ...".
It is the contention of National Union that even if there were completed operations hazard coverage under the policy, there still must be an accident or occurrence for the liability policy to apply. Under the Definitions section of the policy, "occurrence" means "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." In cases involving insurance policies containing identical or substantially similar definitions of occurrence, the court has found no accident or occurrence where the liability of a contractor was dependent solely on his improper construction or faulty repair work. Bacon v. Diamond Motors, Inc., 424 So.2d 1155 (La.App. 1 Cir.1982), writ den., 429 So.2d 131 (La.1983); Vitenas v. Centanni, 381 So.2d 531 (La.App. 4 Cir. 1980).
National Union asserts that the definition of occurrence and the work product exclusions in the policy preclude coverage for defective workmanship. Substantially similar provisions have been held in other cases to exclude coverage for a contractor's defective workmanship on a structure. Old River Terminal Co-op v. Davco Corp., 431 So.2d 1068 (La.App. 1 Cir.1983); Bacon v. Diamond Motors, Inc., supra; Vitenas v. Centanni, supra; Breaux v. St. Paul Fire & Marine Ins. Co., 345 So.2d 204 (La.App. 3 Cir.1977); Peltier v. Seabird Industries, Inc., 304 So.2d 695 (La.App. 3 Cir.1974), writ den., 309 So.2d 343 (La. 1975).
Appellants claim the exclusions are inapplicable to the facts of the present case *375 because similar provisions have been construed not to preclude coverage, citing Superior Steel, Inc. v. Bituminous Cas. Corp., 415 So.2d 354 (La.App. 1 Cir.1982), and Hendrix Elec. Co., Inc. v. Casualty Reciprocal Exch., 297 So.2d 470 (La.App. 2 Cir.1974). We do not find these cases applicable to this factual situation. These cases can be distinguished, since the damage in this case arose from Miller's work product, while in Superior Steel and Hendrix the damage was to the existing property of the customer.
Appellants finally assert that even assuming that the exclusions in the policy do cover the losses claimed, the insurance policy is ambiguous and ambiguities must be resolved in favor of coverage. In interpreting an insurance policy, the court must adhere to the contract between the parties. Moll v. Mutual Health Ben. & Acc. Ass'n, 223 La. 511, 66 So.2d 320 (La.1953). National Union issued Miller a comprehensive general liability policy which included additional blanket coverage. A blanket policy has been described as a "term of art," which falls within the statute providing that "terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong." C.C. Art. 2047; Reliance Insurance Co. v. Orleans Parish School Bd., 322 F.2d 803 (5th Cir. 1963), writ den., 377 U.S. 916, 84 S.Ct. 1180, 12 L.Ed.2d 186 (1964).
Cases involving exclusionary provisions such as those in the policy at issue have held that: "[A] liability insurer who includes a `work product' exclusion in its policy is not liable for damages to the work product (in many cases a building or structure of some sort) of the insured due to negligent, faulty, or defective construction and workmanship." (Emphasis added.) Breaux v. St. Paul Fire & Marine Ins. Co., supra, at page 208.
This holding clearly applies to the present case. National Union specifically included a work product exclusion in the policy issued to Miller. Fredeman's claim against Miller was for damages resulting from defendant's allegedly negligent workmanship. When the language of an insurance contract is clear, the court does not have the power to speculate why the parties drew it as they did. Insurance Company of North America v. Delafield, 278 F.2d 683 (5th Cir.1960). We find that the exclusions of coverage for defendant's work product in the policy National Union issued to Miller are unambiguous and clearly apply in this case.
Appellate courts cannot disturb the factual findings of trial courts in declaratory judgment actions in the absence of manifest error. Succession of City v. Succession of Manuel, 469 So.2d 467 (La.App. 3 Cir.1985); Bavido v. Weixel, 459 So.2d 701 (La.App. 4 Cir.1984). We find that the trial court was not clearly wrong or manifestly in error in finding that the policy issued by National Union to Miller excluded coverage for property damage to Fredeman allegedly caused by Miller's defective workmanship.
For these reasons the judgment of the trial court is affirmed.
All costs of this appeal are taxed equally to plaintiff-appellant, Fredeman, and defendant-appellant, Miller.
AFFIRMED.