315 So.2d 832 (1975)
Edward R. GRADY
v.
Nofie D. ALFONSO, Jr., d/b/a Kevin Construction Co., and the Employers' Liability Assurance Corp., Ltd.
No. 6908.
Court of Appeal of Louisiana, Fourth Circuit.
July 8, 1975.
Mmahat, Gagliano, Duffy & Giordano, Lucas J. Giordano, Metairie, for plaintiff-appellee.
Huddleston, Davis, Saunders & Miller, Albert J. Huddleston, New Orleans, for defendant-appellee, Nofie D. Alfonso, Jr.
*833 Hammett, Leake, Hammett, Hayne & Hulse, Robert E. Leake, Jr., New Orleans, for defendant-appellant Employers' Liability Assurance Corp., Ltd.
Before SAMUEL, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
These proceedings were initiated by plaintiff, Edward R. Grady, to recover damages for breach of a building contract between plaintiff and defendants, Nofie D. Alfonso, Jr., and Milton Helmake, both doing business as Kevin Construction Co., and defendant, Employers Liability Assurance Corp., Ltd. (ELAC) as the surety on the contractor's bond. Helmke was never cited and served so that he was not made a party to the proceedings. Plaintiff sought recovery for $7,225.54 to correct various defects enumerated in his petition, $2,000.00 to repair damage resulting from water seepage, in turn resulting from defective workmanship, demurrage at $10.00 a day from the contractual completion date, July 13, 1969, "until the works are complete," damages for inconvenience and mental anguish, and attorney's fees. ELAC denied the allegations and brought a third-party action against Alfonso and Helmke, seeking indemnification for whatever amounts it might be cast unto plaintiff, the sum of $3,749.71 for amounts it paid to subcontractors and suppliers, and its own costs and attorney's fees. Alfonso reconvened against plaintiff, seeking payment for extras it alleged plaintiff had agreed to over and above what was called for in the contract.
The trial judge found that Alfonso had performed extra work totaling $7,396.00, and that the cost to plaintiff to remedy defective workmanship performed by Alfonso and Helmke amounted to $7,225.54. He also found that plaintiff was due $2,078.14 for some payments which he made directly to subcontractors during the course of the project so that plaintiff was entitled to $1,907.68 against Alfonso as contractor and ELAC as the bonding company. Without specifying how he arrived at the total figure the trial judge awarded to plaintiff a lump sum judgment against Alfonso and ELAC for $7,500.00. On the third-party demand of ELAC he found that it had paid $3,749.71 to various subcontractors and suppliers but it had been reimbursed in the sum of $2,154.33, but without explanation the trial judge awarded to ELAC a judgment on its third-party demand in the amount of $5,345.67. The reconventional demand of Alfonso was dismissed.
From that judgment ELAC took an appeal and plaintiff answered the appeal, seeking an increase in the amount of the award against all defendants. Alfonso also answered the appeal. As a result of these actions the effect of ELAC's appeal is from the entire judgment but that of the answers to the appeal filed by plaintiff and Alfonso is limited with respect to the judgments in favor of ELAC and cannot be used by them to revise, modify or reverse the judgments against these appellees in favor of each other. See LSA-C.C.P. Art. 2133 and comments thereto.
As to the judgment on the main demand, ELAC does not dispute plaintiff's right to recover the $1,907.68 along with the sum of $1,265.00 attorney's fees as provided for in the contract, that is, 5% of the amount of the contract, $25,300.00. It also acknowledges liability for 110 days' demurrage at $10.00 a day or a total of $4,272.68. It contends that the trial judge apparently made errors in arithmetic in awarding the sum of $7,500.00.
However, after the judgment and after the argument on motions for new trial filed by all parties, the trial judge, in denying the motions, stated that he "is of the opinion that a judgment between $5,000.00 and $15,000.00 would be substantiated by the aforesaid testimony and evidence." Thus, the trial judge included a substantial *834 amount in his judgment for demurrage or mental anguish and inconvenience or both.
By contract the parties agreed that the work would be completed on July 13, 1969, and that liquidated damages for demurrage would be payable to plaintiff at $10.00 per day. The contract was for extensive renovations and additions to the residence of plaintiff and when the work commenced he moved out with the intention of returning when the work was completed. When July 13 came the work was at such a stage that it was impossible for plaintiff to move back into the residence and he made arrangements to remain in a temporary location as long as he could.
On November 1, 1969, the temporary residence was no longer available and he was forced to return to his home. At that time the walls were sheetrocked but were in the process of being taped, floated and textured, the ceiling was in a like condition, there was no electricity or gas service, no hot water, and only the plywood subflooring had been installed. Plaintiff testified that the flooring was completed in three or four weeks and the painting in about six weeks, the electricity and gas were apparently completed shortly after plaintiff returned to the premises although the record is not clear on this point. He testified that during this period of time when this work was in progress there was a continuous presence of dust, debris, and general disorder which required continuous cleaning, washing and mopping while plaintiff's family was occupying the residence. This work continued spasmodically for about two months, but by April 17, 1970, plaintiff caused a notice of default to be filed against the contractors. Even thereafter the contractors secured the services of a part-time worker to come in and do work on the project in the evenings and on week ends.
Plaintiff expressed concern about the damage he was sustaining from defective workmanship, particularly leakage which had continued to the date of the trial.
Plaintiff produced estimates from one James J. Kenney, Jr., a contractor, in September and December, 1972, to perform the necessary work to remedy all defects on the job for $7,225.54, with the understanding that the work would take 60 days to perform.
Other testimony at the trial was provided by Kenney and Alfonso. Kenney was the building expert appointed by the Homestead which was financing the project pursuant to a "stakeholder" agreement among all parties to the transaction. He testified that the job had progressed satisfactorily until October, 1969, when a first material man's lien was filed against the job. This signaled the beginning of difficulties which required him to become increasingly involved in the supervision of the job, and particularly the payment of funds to various subcontractors in cooperation with representatives of ELAC. His records revealed that in January, February, and March various subcontractors and suppliers were paid from the homestead's proceeds, the last such payment being made to Henry O'Kane on March 6, 1970.
The balance in the account on May 18, 1970, was $2,454.36 and was then paid to ELAC. Kenney also produced records to show that ELAC paid out $3,749.71, consisting of $847.71 on June 2, 1970, for brickwork, $513.00 on November 20, 1970, for sheetrock, $484.00 on September 18, 1970, for sheet metal work, and $1,905.00 to Kenney's Construction Company on February 25, 1972. The record does not show when the work was done in connection with the first three mentioned payments but with respect to the last one mentioned this was necessitated by the fact that some time after plaintiff returned to the house he discovered that the fireplace was defective to the extent that it could not be used and Kenney's work was for the correction of the fireplace and chimney.
Alfonso testified that his initial connection with the job was more in the nature of architectural and engineering services *835 but that Helmke was to do the actual supervision. As the job progressed he did become aware of Helmke's failure to attend to his end of the project as calls were being received from irate subcontractors and suppliers. It developed that the job was overrunning in cost and funds were short. He complained that both ELAC's representatives and Kenney were making payments to suppliers and subcontractors notwithstanding defective workmanship and that plaintiff did not pay him for extra work which he had undertaken with the approval and agreement of plaintiff and which, at the end of the project, totaled $7,396.00.
Plaintiff's case on damages is based on the proposition that he is entitled to $10.00 per day liquidated damages from July 13, 1969, until whatever date "substantial completion" was achieved and thereafter he is entitled to damages for mental anguish and inconvenience caused him by the defects and incompleted work still remaining.
As to demurrage, there is no question but that plaintiff is entitled to recovery for 110 days for the period of July 13 to October 31, 1969, at $10.00 per day. In the light of plaintiff's testimony that the flooring, painting and electrical and gas connections were completed within six weeks thereafter we have concluded that plaintiff is entitled to another 42 days of demurrage. In view of the uncontradicted estimates produced by plaintiff and Kenney that remedial work would take another 60 days, we find that he is entitled to additional demurrage for that period.
The record does not explain why plaintiff did not place defendants in default before April, 1970, and does not excuse him from sooner employing another contractor to finish the job and remedy all defective workmanship performed by defendant contractors. Plaintiff is not entitled to sit by ad infinitum under the impression that the contract has not been completed but expecting to be reimbursed at $10.00 per day until whenever it is completed without taking affirmative action to place the contractor in default and finish the job, thereby minimizing his damage. As to any claim for damages for inconvenience and mental anguish beyond the period for which he is being compensated at $10.00 per day, such damages are not recoverable since they also resulted in part from plaintiff's failure to take appropriate action.
We therefore conclude that plaintiff is entitled to the following:

Remedial work done by plaintiff $7,225.54
Allowances and disbursements made by
plaintiff during the course of work 2,078.14
Liquidated damages, 212 days at $10.00 2,120.00
Attorney's fees per contract 1,265.00
 __________
 $12,688.68
Less amount due Alfonso for extra work $7,396.00
 __________
Total amount due plaintiff $5,292.68

The judgment in favor of plaintiff and against ELAC will be amended accordingly.
As to the judgment on ELAC's third-party demand against Alfonso, the evidence shows that the balance of the amount in the homestead escrow account in May, 1970, $2,154.33 was paid by the homestead to ELAC, and the trial judge evidently deducted that amount from the $7,500.00 award in favor of plaintiff against ELAC to arrive at the sum of $5,345.67 due ELAC by Alfonso on its third-party demand. In the first place, this overlooks the fact that ELAC paid to various claimants discussed above the sum of $3,749.71 for which it is entitled to be reimbursed by Alfonso. While Alfonso testified that ELAC paid prematurely for work which was defective, his testimony on this point was vague and by his own admission he was not familiar with the day to day progress or status of the job. Alfonso relies on LSA-C.C. Art. 3056, which provides that the surety has no recourse against the principal where a payment is made to the creditor under conditions where "the debtor was in possession of such means as would have enabled him to *836 have the debt declared extinct." But Alfonso failed to show that he was in that position, and consequently we see no merit to his contention. Furthermore, ELAC's suit is on an indemnification agreement under which the indemnitor agreed to indemnify and hold ELAC harmless from "every claim, liability, cost, charge, counsel fee . . . expense . . . ." While this indemnification agreement was signed by Milton J. Helmke, Jr. as partner of Nofie D. Alfonso, Jr. and Milton Helmke, d/b/a Kevin Construction Co., Alfonso's testimony was unequivocal to the effect that he and Helmke undertook the entire project as a partnership at its inception and not until after the default did Alfonso question any action taken by Helmke. We have concluded that Alfonso was bound by the indemnification agreement which was a condition for ELAC to undertake the suretyship for Alfonso's company in the first instance. Accordingly, ELAC is entitled to full indemnification against Alfonso in the sum of $5,292.68, together with reasonable attorney's fees. ELAC seeks $2,500.00 which appears to be reasonable under the circumstances. ELAC is also entitled to recover the $3,749.71 it paid to claimants less the $2,154.33 it received from the homestead, or $1,595.38. Accordingly, judgment on the third-party demand in favor of ELAC and against Alfonso will be amended to the sum of $9,388.06.
Accordingly, the judgment appealed from is affirmed but amended so that the judgment in favor of plaintiff, Edward R. Grady, as against defendant, Employers' Liability Assurance Corporation, Ltd., is reduced to the sum of $5,292.68 plus interest from date of judicial demand until paid, and all costs;
The judgment in favor of third-party plaintiff, Employers' Liability Assurance Corporation, Ltd., and against Nofie D. Alfonso, d/b/a Kevin Construction Company, is increased to the sum of $9,388.06 plus legal interest from date of judicial demand until paid, and all costs;
In all other respects the judgment appealed from is affirmed.
Amended and affirmed.