430 So.2d 1217 (1983)
COMMERCIAL UNION INSURANCE COMPANY
v.
Armand V. MELIKYAN, et al.
No. 82 CA 0624.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Rehearing Denied May 20, 1983.
*1218 David S. Bell, Baton Rouge, for plaintiffappellee, Commercial Union Ins. Co.
Jerry McKernan, Baton Rouge, for defendant-appellee, Arman V. Melikyan.
Lawrence A. Durant, Baton Rouge, for defendant-appellee, John A. Melton.
Craig Kaster, Baton Rouge, for defendant-appellee, Don R. Estellee.
Stephen K. Peters, Baton Rouge, for defendant-appellant, Arman V. Melikyan.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This appeal by Arman V. Melikyan arises out of a series of transactions which are as follows.
In 1973, plaintiff, Commercial Union Insurance Company (Commercial), entered into a General Application and Indemnity Agreement with Lent, Inc., as principal, and with Lent, Inc., Arman V. Melikyan, John A. Melton, and Don (Donathan) R. Estelle, as indemnitors, providing for indemnification to Commercial for any sums that Commercial may be required to pay on bonds issued for Lent, Inc. for performance of certain construction contracts.
Relying upon this indemnification agreement, Commercial subsequently issued performance bonds on three separate jobs undertaken by Lent, Inc.[1] Lent, Inc. defaulted on payments to certain subcontractors *1219 and Commercial made various payments to discharge its bond obligations.[2]
After making payments to discharge its bond obligations, Commercial filed this proceeding naming as defendants, Melikyan, Melton, and Estelle, and seeking a judgment in solido against the defendants in the sum of $40,313.76, with interest, attorney's fees, and costs.
After the original petition was filed, Commercial filed a motion to dismiss its action against John A. Melton, reserving all rights and causes of action against all other defendants, namely, Melikyan and Estelle. On February 3, 1980, judgment was signed pursuant to the motion, and this judgment is now final and not a part of this appeal.
It appears from the record that in April of 1976, in consideration of the transfer of all of Estelle's stock in Lent, Inc., that Lent, Inc., Melikyan, and Melton entered into a Hold Harmless Agreement with Estelle agreeing to hold him harmless and indemnify him (Estelle) from all claims, damages, *1220 actions, etc., including attorney's fees, resulting from any obligation Estelle may incur as an indemnifier of Lent, Inc. On January 23,1980, Estelle filed an answer to the petition of Commercial, denying the various allegations and asserting affirmative defenses, and additionally filed a thirdparty demand against Melikyan and Melton. In Estelle's third-party demand, he asked for judgment (based on the Hold Harmless Agreement) against Melton and Melikyan for all amounts that he may be condemned to pay to Commercial, plus costs and attorney's fees.
Therefore, at this stage, we find Commercial filing suit against Melikyan, Estelle, and Melton, as three of its four indemnifiers, and Estelle filing a third-party petition against Melton and Melikyan as two of three of his indemnifiers. Melton was released from the suit by Commercial, as to Commercial's claim, but remains in the proceeding as one of three indemnifiers of Estelle under the 1976 Hold Harmless and Indemnification Agreement between Estelle and Melton, Melikyan, and Lent, Inc.
On February 26, 1980, Melikyan filed an answer to the petition of Commercial, an answer to the third-party demand of Estelle, and additionally filed a third-party demand against Melton alleging that Melton, as a co-debtor in solido, was liable for contribution to Melikyan for one-half of the debts and liabilities owed both to Commercial and Estelle.
Melton filed an answer to the third-party petition of Melikyan and additionally filed a reconventional demand against Melikyan alleging that in the event that he is found to be a co-debtor in solido with Melikyan (to Estelle) as a result of Estelle's third-party action, then Melikyan is indebted to Melton for one-half of any sums for which he may be held liable to Estelle.
The trial court determined that the actual amount owed to Commercial was $37,300.04, plus attorney's fees of $11,978.59, for a total of $49,278.63. Since there were four indemnifiers on the General Application and Indemnity Agreement (Lent, Inc., Melikyan, Melton, and Estelle), and one of these indemnifiers (Melton) had been released by Commercial, the total amount was then reduced by one-fourth to reflect Melton's release, and judgment was rendered in favor of Commercial and against Melikyan and Estelle, in solido, in the amount of $36,958.77.[3]
The trial court further rendered judgment in favor of third-party plaintiff Estelle and against third-party defendants, Melikyan and Melton, in solido, for any sums that Estelle actually pays to Commercial, plus in any event, the sum of $1,397.25 as attorney's fees and additionally all costs.
The third-party demand of Melikyan against Melton seeking contribution for "one-half of the total amount of debts and liabilities allegedly owed to both Commercial and Estelle" was rejected.
The reconventional demand of Melton against Melikyan seeking contribution by Melton from Melikyan in the event that Estelle was successful in effecting recovery against Melton on the Estelle claim was also rejected.
Melikyan, alone, has appealed with the following assignments of error:
1. The trial court erred in holding that Commercial Union sustained its burden of proof by a mere showing of "good faith payment," although it failed to prove the claims it paid were owed by Lent, Inc., as principal, or were bonded claims for which the appellant would be liable as indemnitor.
2. The trial court erred in awarding attorney's fees to Commercial Union and Don R. Estelle against appellant.
3. The trial court erred in reducing the debt by one-fourth rather than onethird.
4. The trial court failed to recognize the legitimacy of appellant's claim for *1221 contribution of one-half from John A. Melton with respect to the obligation of appellant to Commercial Union and Don R. Estelle.

ASSIGNMENT OF ERROR NO. 1
Appellant contends that although Commercial proved that it paid these claims, it failed to prove that Lent, Inc. actually owed the claims, and that even if Lent's liability had been established, the indemnitors would not be liable unless it was proven that liability was within the scope of the bond obligation undertaken by Commercial.
As we appreciate appellant's argument, he is saying that because La.Civ.Code art. 3037[4] requires that the surety obligation not exceed what may be due by the debtor nor be contracted under more onerous conditions, Commercial was bound to satisfactorily prove at trial the amounts of the claims against Lent, Inc. and whether the claims were within the scope of the bond obligation. Appellant fails to recognize, however, that this is a suit on a contract of indemnity, not on suretyship. The contract of indemnity forms the law between the parties and must be interpreted according to its own terms and conditions. See Grady v. Alfonso, 315 So.2d 832 (La. App. 4th Cir.1975). In a surety contract, the surety cannot be bound to the obligee to any greater extent than the obligation contained in the agreement between the obligor and obligee, but in an indemnity contract, the principal and indemnitors can be bound to the surety in any manner they elect in consideration of the surety issuing the bond covering the principal obligation.
The answer to appellant's claim lies in Section 5 of the General Application and Indemnity Agreement. That Section reads as follows:
"5. We agree that the Company shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against the Company or any of us on any such bond shall or shall not be settled, compromised, resisted, defended, tried or appealed, and the Company's decision thereon, if made in good faith, shall be final and binding upon us. An itemized statement of payments made by the Company for any of the purposes specified herein, or the voucher or vouchers for such payments, shall be prima facie evidence of our liability to reimburse the Company for such payments, with interest." (Underlining by the Court)
This Section clearly gives to Commercial the exclusive right to determine whether the claims should be settled. Proof of payments made by Commercial constitute prima facie evidence of defendants' liability. Two notarized documents, entitled "Receipt, Release, Assignment and Subrogation," were entered into evidence, one executed by Vincent's Construction, and one executed by B & B Insulation, which attest to the amounts paid to these companies by Commercial on its bond obligation. (Payments on claims to these two companies were the only payments that were contested by the defendants).
The only real issue is whether these payments were made in "good faith". The trial court found that they were. Testimony and evidence received during trial show that Commercial made repeated efforts to discuss the claims with Mr. Melikyan. The trial court found that Mr. Melikyan had some questions as to the amount of the Vincent claim but did not dispute the existence of the claim. However, neither Mr. Melikyan nor any other of the indemnitors ever furnished to Commercial any basis on which a defense to the amounts of any claims could have been made.
*1222 Apparently, appellant argued in the trial court that some claims exceeded the original subcontract agreements and that Commercial should have known about these changes and should have refused to honor the additional claims. However, Mr. Melikyan testified that he never gave Commercial any change orders or any other written document or any evidence showing any change in the B & B or the Vincent contract.
The trial court stated the following in written reasons and we agree:
"First, the court notes that the bond for private work in this case issued to Lent for the protection of Niro was for a total of $256,400.00. An inspection of the bond (filed in evidence as C.U.-5) fails to show that the coverage is less than the above total for any one contract or subcontract. In other words, the bond is not broken down into specific amounts of protection per subcontract. In short, the court believes that the bond in question provided a coverage limit up to the face amount regardless of the original contract limit of a subcontractor. It would be novel indeed for this court to hold that a claim by a subcontractor which exceeded the original subcontractor price, but which did not come even close to exceeding the bonded amount, would not be covered by the bond. This is especially true when, as here, the bond makes no distinction, or even mention of any subcontract. The court believes that so long as the face amount of the bond has not been exceeded, then all payments by plaintiff relating to the Niro job were proper."
Having found that plaintiff properly paid the claims in good faith, in accordance with authority given to it in the indemnity agreement, we now look to see if plaintiff can be indemnified for these payments. Section 2 of the General Application and Indemnity Agreement reads as follows:
"2. We will perform all the conditions of such bonds and indemnify the Company against any and all liability, loss, costs, damages, fees of attorneys and other expenses which the Company may sustain or incur in consequence of the execution of such bonds, including but not limited to, sums paid or liability incurred in settlement of, and expenses paid or incurred in connection with claims, suits or judgments under any such bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid."
We find no ambiguity in this provision. Clearly, the indemnitors bound themselves to Commercial for any and all liability Commercial may incur in consequence of the execution of the bonds.

ASSIGNMENT OF ERROR NO. 2
Appellant contends that the awards of attorney's fees to Commercial and Estelle are based on contractual guaranties which were given under more onerous conditions than the principal obligation owed by Lent, Inc. to its creditors, in violation of La.Civ. Code art. 3037. Appellant argues that since the obligation by him to Commercial was dependent upon the liability of Lent Inc. to its creditors, Commercial's rights against its indemnitors are limited thereby. Again, we point out that we are not dealing with a suretyship obligation, but with a contract of indemnity which must be construed according to its own terms.
With regard to attorney's fees claimed by Commercial, the trial court held as follows:
"Furthermore, the court also holds that the defendants must pay to plaintiff $6,978.59, which sum reflects the expenses and fees of attorneys which the plaintiff incurred as a consequence of Lent's default. Authority for this award is found in the clear unambiguous language of Section 2 of the indemnity agreement referred to above. Additionally, the court awards the plaintiff $5,000.00 as reasonable attorney's fees in connection with the enforcement of the indemnity agreement, as provided in the indemnity agreement."
The claim by Commercial for attorney's fees is based solely on Section 2 of the *1223 General Application and Indemnity Agreement which forms the law between the parties. That section clearly provides for attorney's fees incurred in the execution of the bonds. See Al Smith's Plumbing, Etc. v. River Crest, Inc., 365 So.2d 1122 (La.App. 4th Cir.1978).
With regard to Estelle, the Hold Harmless Agreement entered into between him and Lent, Inc., Melikyan, and Melton clearly provides that Estelle be indemnified for any attorney's fees he may incur as an indemnitor of Lent, Inc. Again, this contract forms the law between the parties and the award to Estelle of attorney's fees incurred in enforcing the Hold Harmless Agreement is correct.

ASSIGNMENT OF ERROR NO. 3
The indemnity agreement lists Lent, Inc., as principal, and Lent, Inc., Melikyan, Melton, and Estelle as indemnitors. Appellant, relying on La.Civ.Code art. 3035[5], argues that since Lent, Inc. was the principal in the indemnity agreement, that it cannot also be an indemnitor in the same agreement. Thus, only the three named individuals are indemnitors, and the release of Melton must operate to reduce the claim by one-third rather than one-fourth.
In the indemnity contract, Lent, Inc. is identified as a principal and as an indemnitor. The language of the agreement clearly indicates that Lent, Inc. is bound, in either capacity, with the three individuals for any liability Commercial may incur in consequence of the execution of the bonds. The trial court was correct in finding that there were four solidary obligors and in reducing the judgment by one-fourth.

ASSIGNMENT OF ERROR NO. 4
Appellant argues that he is entitled to contribution from John Melton for one-half of his total liability.
La.Civ.Code art. 2103 provides that a defendant who is sued on a solidary obligation may enforce contribution, if he is cast, against his solidary co-debtor. However, when a creditor settles with one solidary obligor, there is no basis for a claim by the unreleased solidary obligor for contribution against the released solidary obligor. Since the creditor has deprived the unreleased obligor of his right to enforce contribution, the amount recoverable against the unreleased obligor is reduced pro rata. Wallace v. Pan American Fire & Cas. Co., 386 So.2d 158 (La.App. 3rd Cir.1980). Commercial settled with and released John Melton, and the trial court correctly reduced Commercial's total claim to reflect this release. Melikyan has no further rights against Melton for any part of the amounts Melikyan may pay to Commercial.
However, as to Melikyan's claim against Melton for contribution for sums Melikyan must pay to Estelle on the Hold Harmless Agreement, the trial court judgment is reversed. The trial court correctly found that Melikyan and Melton were liable, in solido, to Estelle, because of the Hold Harmless Agreement, for any amounts Estelle might have to pay to Commercial and for attorney's fees. Because Melikyan and Melton are solidary obligors, as to the Hold Harmless Agreement, Melikyan's claim for contribution from Melton on any amounts Melikyan pays to Estelle should be allowed, but only for one-third of the amount, not one-half, since Lent, Inc., Melton and Melikyan were the three obligors on the Hold Harmless Agreement contracted with Estelle.[6]
After the delays for answering this appeal had expired, Commercial, appellee, filed a Motion to File Additional Evidence in Record with this Court seeking an increase in attorney's fees for post-trial legal *1224 services rendered. LSA-C.C.P. art. 2133 provides that an appellee is not obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. This Commercial did not do; therefore, we cannot grant an additional amount in attorney's fees for legal services rendered post-trial.
For the above reasons, the trial court judgment denying Melikyan's claim for contribution against Melton for sums Melikyan may pay to Estelle is reversed and judgment is rendered in favor of Arman V. Melikyan and against John A. Melton for one-third (1/3) of any sums that Melikyan may pay to Estelle under the Hold Harmless Agreement only. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] This appeal involves only one of the jobs, a job for which Commercial bonded a contract between Lent, Inc. and Niro Atomizer, Inc. in the amount of $256,400.00 in August, 1975. The job was for the various work at the Conoco Plant in Lake Charles, Louisiana.
[2] The trial court found and we agree as follows:

"The third and final contract and the only one which remains in controversy, is an agreement signed on August 7, 1975 between Lent and Niro Atomizer, Inc. for construction of improvements at the Continental Oil Company (Conoco) plant in Lake Charles. Once again the controversy centers around two subcontracts entered into by Lent, one being with B & B Insulation of Louisiana, Inc., and a second with Vincent Construction, Inc. The court will deal with each subcontract separately; however, it is important to note at the outset that the original bond issued on the work by plaintiff was in the amount of $256,400.00.
"First was the contract signed between Lent and B & B in July of 1975 for insulation work on the Niro job. For simplicity, the court will divide the B & B subcontract into two separate phases. The first phase shall be called the purchase order work; the second shall be labeled as extra work.
"The first phase entailed work at the initial price of $82,800 which was covered under the original bond. Subsequent to this time, new purchase orders were made totalling $36,955.73. The present controversy involves this second figure. Defendant argues that because this figure was not included in the original contract, plaintiff's bond did not cover it and therefore plaintiff should not have made any payments which related to this $36,955.73 figure for new purchase orders. Plaintiff argues in opposition that the bond did cover increases such as this, and therefore, the indemnitors agreement `reaches' the plaintiff's payments relating to this amount.
"The second phase involves extra work B & B did on the job, only partly paid for by Lent, and the later paid-up by plaintiff. It is apparent to the court that the extra work referred to simply means day to day extras any job would entail. The total extra work billed by B & B was $27,582.58; of this amount, Lent paid $10,225.98 leaving a balance of $17,356.60 which was later paid in full by plaintiff. Defendant raises the same argument as above; namely that this work was not covered by the original bond and therefore should not have been paid by plaintiff.
"The second subcontract on the Niro job was with Vincent Construction, Inc. the total due Vincent came to $16,163.10 of which $11,403.24 was paid by plaintiff. Defendant submits two defenses to this payment by plaintiff: 1) defendant raises the same defense as above, namely that this was work done not bonded by plaintiff, and therefore plaintiff should not have paid it; 2) in the alternative, defendant argues that even if this work by Vincent was bonded Lent had a defense to Vincent's claim and plaintiff was notified of such, and therefore should not have paid it.
"The court now turns to a consideration of the defenses raised by the defendant in light of the indemnity agreement signed by the defendant's, the applicable provisions of the bond between Niro and Lent, and finally the jurisprudence on the issue.
"First, the court notes that the bond for private work in this case issued to Lent for the protection of Niro was for a total of $256,400.00. An inspection of the bond (filed in evidence as C.U.-5) fails to show that the coverage is less than the above total for any one contract or subcontract. In other words, the bond is not broken down into specific amounts of protection per subcontract. In short, the court believes that the bond in question provided a coverage limit up to the face amount regardless of the original contract limit of a subcontractor. It would be novel indeed for this court to hold that a claim by a subcontractor which exceeded the original subcontractor price, but which did not come even close to exceeding the bonded amount, would not be covered by the bond. This is especially true when, as here, the bond makes no distinction, or even mention of any subcontract. The court believes that so long as the face amount of the bond has not been exceeded, then all payments by plaintiff relating to the Niro job were proper."
[3] No one sued Lent, Inc. or made Lent, Inc. a defendant or third-party defendant, and no claim was filed against Lent, Inc. for any sum whatsoever, including no claim for contribution.
[4] La.Civ.Code art. 3037 provides as follows:

Art. 3037. Extent of suretyship obligation
"The suretyship can not exceed what may be due by the debtor, and not be contracted under more onerous conditions.
It may be contracted for a part of the debt only, or under more favorable conditions.
The suretyship which exceeds the debt or which is contracted under more onerous conditions shall not be void, but shall be reduced to the conditions of the principal obligation."
[5] La.Civ.Code art. 3035 provides as follows:

Art. 3035. Suretyship, definition
"Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not."
[6] Lent, Inc. (along with Melikyan and Melton) also was a party to the Hold Harmless Agreement but not sued in any capacity. The amount recoverable must be reduced by onethird to reflect Lent, Inc.'s pro rata share.